# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

—————————————————————— )
**NUCLEAR WATCH NEW MEXICO,** )
)
*Plaintiff*, )
**v.** )                    **No.**
)
**UNITED STATES DEPARTMENT OF** )
**ENERGY,** )
**and** )
)
**LOS ALAMOS NATIONAL SECURITY,** )
**LLC,** )
*Defendants.* )
—————————————————————— )

## COMPLAINT

Nuclear Watch New Mexico alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action pursuant to the citizen suit provisions of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, against the United States Department of Energy ("DOE"), and Los Alamos National Security, LLC ("LANS"), under contract to the DOE as the co-operator with DOE of the Los Alamos National Laboratory ("LANL" or "the Laboratory"), Los Alamos County, New Mexico.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1346, and 42 U.S.C. § 6972(a).

**3.**     Venue is proper in the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1391(b), because the DOE and LANS conduct business in this district,

the alleged violations occurred in this district, and the claims in this civil action arose in this district.

## PARTIES

4.      The Plaintiff in this action, Nuclear Watch New Mexico, is a project of the Southwest Research and Information Center, a not-for-profit corporation organized under the laws of the State of New Mexico.  Nuclear Watch New Mexico is a "person" within the meaning of sections 1004(15) and 7002(a) of RCRA, 42 U.S.C. §§ 6903(15), 6972(a).  The mission statement of Nuclear Watch New Mexico includes citizen action to promote environmental protection and cleanup at nuclear facilities.  Nuclear Watch New Mexico has been an active participant in hazardous waste management and cleanup issues at the Laboratory.  The executive director of Nuclear Watch New Mexico has a personal interest in cleanup of environmental contamination at the Laboratory.  He is an avid hiker and rock climber, and he often enjoys these activities in the canyons and on the cliffs around the Laboratory, in the neighboring town of White Rock, and in the adjacent Bandelier National Monument and Santa Fe National Forest.

5.      Defendant DOE is a department, agency, or instrumentality of the United States. DOE owns and operates LANL in Los Alamos County, New Mexico.  DOE is a "person" within the meaning of sections 1004(15) and 7002(a) of RCRA, 42 U.S.C. §§ 6903(15), 6972(a).

6.      Defendant LANS is a limited liability company organized under the laws of the State of Delaware.  LANS operates LANL under a contract with the National Nuclear Security Administration ("NNSA"), the semi-autonomous nuclear weapons agency within the DOE. LANS is a "person" within the meaning of sections 1004(15) and 7002(a) of RCRA, 42 U.S.C. §§ 6903(15), 6972(a).

7.     Congress has clearly and unambiguously waived the sovereign immunity of the United States, including DOE, in section 6001(a) of RCRA, 42 U.S.C. § 6961(a).

## STATUTORY AND REGULATORY BACKGROUND

8.     Congress passed RCRA in 1976 to provide nationwide protection against the dangers of improper hazardous waste disposal.  RCRA is a comprehensive statutory scheme providing for the cradle-to-grave regulation of solid and hazardous wastes.  Subtitle C of RCRA, 42 U.S.C. §§ 3001 to 3013 (subchapter III), addresses the regulation of hazardous waste.

9.     RCRA section 1002(5) defines "hazardous waste," with certain exceptions, as "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may (A) cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) may pose a serious risk to human health or the environment if not properly managed."  42 U.S.C. § 6903(5).

10.     RCRA requires the United States Environmental Protection Agency ("EPA") to promulgate regulations for the management of hazardous wastes, including standards governing facilities that treat, store, or dispose of hazardous waste, "as may be necessary to protect human health and the environment." 42 U.S.C. § 6924.

11.     RCRA, in section 3004(u) and (v), also provides that the standards must include corrective action, or cleanup, requirements for releases into the environment of hazardous waste or hazardous waste constituents.  42 U.S.C. § 6924(u), (v).

12.     RCRA section 3005(a) provides that a hazardous waste treatment, storage, or disposal facility must have a permit, issued by EPA or an authorized state, in order to operate. 42 U.S.C. § 6925(a).

13.     EPA has promulgated regulations setting standards for facilities that treat, store, or dispose of hazardous waste, 40 C.F.R pts. 264, 265 (2016); requiring corrective action for releases into the environment of hazardous waste and hazardous constituents, 40 C.F.R §§ 264.100, 264.101 (2016); and providing for permits for facilities that treat, store, or dispose of hazardous waste, 40 C.F.R pt. 270.

14.     RCRA provides that EPA can authorize a state to administer and enforce its hazardous waste program "in lieu of the Federal program."  42 U.S.C. § 6926(b).  An authorized state can "issue and enforce permits for the storage, treatment, or disposal of hazardous waste." *Id.*  To be authorized, a state program must be "equivalent to the Federal program," provide for "adequate enforcement," and meet other minimum criteria.  *Id.*

15.     The New Mexico Legislature enacted the New Mexico Hazardous Waste Act ("HWA") in 1978.  N.M. Stat. Ann. §§ 74-4-1 to 74-4-14.  The statute generally provides for state regulation of the generation, transportation, storage, treatment, and disposal of hazardous waste.  N.M. Stat. Ann. §§ 74-4-4, 74-4-4.2, 74-4-4.3, 74-4-9, 74-4-10, 74-4-10.1.

16.     The HWA is the state analogue of RCRA.  The HWA was modeled on RCRA, it contains many provisions that are similar to those in RCRA, and it became effective pursuant to RCRA.

17.     The HWA defines "hazardous waste," with certain exceptions, as "any solid waste or combination of solid wastes that because of their quantity, concentration[,] or physical, chemical[,] or infectious characteristics may: (1) cause or significantly contribute to an increase in mortality or an increase in serious irreversible or incapacitating reversible illness; or (2) pose a substantial present or potential hazard to human health or the environment when improperly

treated, stored, transported, disposed of[,] or otherwise managed."  N.M. Stat. Ann. § 74-4-3(K) (2010).

18.    The HWA requires the New Mexico Environmental Improvement Board to adopt rules for the management of hazardous waste, including performance standards applicable to owners and operators of facilities for the treatment, storage or disposal of hazardous waste, as may be necessary to protect public health and the environment.  N.M. Stat. Ann. §§ 74-4-4(A)(5) (2010).  Such rules must be "equivalent to and no more stringent than federal regulations adopted by [EPA] pursuant to [RCRA], as amended."  *Id.* § 74-4-4(A).

19.    The HWA also provides that the standards must include requirements for the taking of corrective action for all releases of hazardous waste or hazardous constituents from a solid waste management unit at a treatment, storage, or disposal facility.  N.M. Stat. Ann. § 74-4-4(A)(5)(h) (2010).

20.    The HWA also provides that the rules must require each person owning or operating a facility for the treatment, storage, or disposal of hazardous waste to have a permit issued by the New Mexico Environment Department.  N.M. Stat. Ann. § 74-4-4(A)(6) (2010).

21.    The Environmental Improvement Board has adopted regulations incorporating by reference the federal standards for facilities that treat, store, or dispose of hazardous waste, N.M. Admin. Code §§ 20.1.4.500, 20.1.4.600 (2016); the federal requirements for corrective action for releases into the environment of hazardous waste and hazardous constituents, N.M. Admin. Code § 20.1.4.500 (2016); and the federal requirements for permits for facilities that treat, store or dispose of hazardous waste, N.M. Admin. Code § 20.1.4.900 (2016).

22.    The State of New Mexico received EPA authorization to implement its hazardous waste program under the HWA in lieu of the federal program on January 25, 1985.  50 Fed. Reg.

1515 (Jan. 11, 1985); *see also* 55 Fed. Reg. 28397 (July 11, 1990); 60 Fed. Reg. 53708 (Oct. 17. 1995); 61 Fed. Reg. 2450 (Jan. 26, 1996).

23.     RCRA requirements, including state requirements that have become effective pursuant to RCRA, can be enforced by citizen suit.  RCRA section 7002(a)(1)(A) provides that any person may commence a civil action on his or her own behalf against any person (including the United States, and any other governmental instrumentality or agency, to the extent permitted by the Eleventh Amendment to the Constitution) "who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order that has become effective pursuant to" RCRA.  42 U.S.C. § 6972(a)(1)(A).  The court in such action may enforce the permit, standard, regulation, condition, requirement, prohibition, or order that has been violated, and may impose an appropriate civil penalty.  42 U.S.C. § 6972(a).

24.     RCRA section 3008(g) provides that any person who violates any requirement of RCRA is liable for a civil penalty not to exceed $25,000 for each day of violation.  42 U.S.C. § 6928(g).  Pursuant to the Debt Collection Improvement Act of 1996, Public Law 104-134, each Federal agency is required to issue regulations adjusting for inflation the maximum civil monetary penalties that can be imposed under the statutes that agency implements.  Accordingly, EPA adjusted the maximum civil penalty of $25,000 under section 3008(g) of RCRA upward to $37,500 for each day of the violation, for all violations occurring after January 12, 2009.  40 C.F.R. § 19.4 (2016).

25.     RCRA section 6001(a) provides that each department, agency, and instrumentality of the United States "shall be subject to, and comply with, all Federal, State, interstate, and local requirements, both substantive and procedural . . . respecting control and abatement of solid waste or hazardous waste disposal and management in the same manner, and

to the same extent, as any person is subject to such requirements." These requirements include administrative orders, injunctive relief, and fines and penalties.  42 U.S.C. § 6961(a).

## GENERAL ALLEGATIONS

**A.**  ***The Laboratory***

26.    Los Alamos National Laboratory began operations in 1943 when the United States Army Manhattan Engineer District was established for the development and assembly of an atomic bomb.  Current and historic operations have included nuclear weapons design and testing; production of plutonium pits (the fissile cores of nuclear weapons); high explosives research, development, fabrication, and testing; chemical and material science research; electrical research and development; laser design and development; and photographic processing.

27.    LANL currently comprises approximately 37 square miles (23,680 acres) and is located on the Pajarito Plateau in Los Alamos County in north central New Mexico, approximately 60 miles north-northeast of Albuquerque and 25 miles northwest of Santa Fe. The Laboratory is surrounded by the Pueblo of San Ildefonso, Los Alamos County, Bandelier National Monument, Santa Fe National Forest, and Santa Fe County.

28.    The Pajarito Plateau is dissected by nineteen major surface drainages or canyons and their tributaries.  The canyons run roughly west to east or southeast.  From north to south, the most prominent canyons are Pueblo Canyon, Los Alamos Canyon, Sandia Canyon, Mortandad Canyon, Pajarito Canyon, Cañon de Valle and Water Canyon, Ancho Canyon, and Chaquehui Canyon.  These canyons drain into the Rio Grande, which flows along part of the eastern border of the Laboratory.

29.     According to hydrogeologic investigations there are four discrete hydrogeologic zones beneath the Pajarito Plateau on which LANL is located: (1) canyon alluvial systems; (2) intermediate perched water in the volcanic rocks (Tschicoma Formation and the Tshirege Member of the Bandelier Tuff); (3) canyon-specific intermediate perched water within the Otowi Member of the Bandelier Tuff, Cerros del Rio basalt and sedimentary units of the Puye Formation; and (4) the regional aquifer.

30.     Water supply wells at the Laboratory, in Los Alamos County, and on San Ildefonso Pueblo property, withdraw water from the regional aquifer beneath the Pajarito Plateau for drinking and other domestic purposes.

31.     LANL has been divided into approximately 54 Technical Areas or "TAs." Currently, 49 TAs exist (several former TAs have ceased operations or have been combined with other TAs.)   The existing TAs include TA-16, located on the southwestern side of the Laboratory; TA-21, located on DP Mesa on the northern side of the Laboratory; TA-49, located on the southwestern boundary of LANL on Frijoles Mesa; TA-50, located in the center of LANL between Mortandad Canyon and Two Mile Canyon; and TA-54, located at the eastern end of Mesita del Buey on the eastern side of LANL.

32.     For the purpose of managing and administering waste disposal at the Laboratory, LANL's operators have categorized certain areas within the TAs as "Material Disposal Areas" or "MDAs." These include, for example, MDAs A, B, T, U, and V in TA-21; MDA C in TA-50; MDAs G, H, and L in TA-54.

33.     As a result of LANL operations from approximately 1943 to the present, DOE and LANS (and their predecessors) have generated, treated, stored, disposed of, and otherwise

handled hazardous waste" within the meaning of section 1004(5) of RCRA, 42 U.S.C. § 6903(5), at the Laboratory.

34.    DOE and LANS have engaged in the "disposal" of hazardous wastes within the meaning of section 1004(3) of RCRA, 42 U.S.C. § 6903(3), at LANL.  DOE and LANS have disposed of such wastes in septic systems, pits, surface impoundments, trenches, shafts, landfills, and waste piles at the Laboratory.  DOE and LANS have also discharged such wastes in industrial wastewater and other waste from outfalls into many of the canyon systems at LANL.

35.    DOE and LANS have also engaged in the "storage" and "treatment" of hazardous waste within the meaning of section 1004(33) and (34) of RCRA, 42 U.S.C. § 6903(33), (34), at LANL.

36.    Within the meaning of section 3004(u) and (v) of RCRA, 42 U.S.C. § 6924(u), (v),waste management activities at LANL have resulted in the "release" into the environment of hazardous wastes at the Laboratory.

37.    Hazardous wastes within the meaning of section 1004(5) of RCRA, 42 U.S.C. § 6903(5), that have been released into, and detected in, soils and sediments at LANL include, explosives, such as RDX, HMX, and trinitrotoluene (TNT); volatile organic compounds and semi-volatile organic compounds; metals such as arsenic, barium, beryllium, cadmium, hexavalent chromium, copper, lead, mercury, molybdenum, silver, and zinc; and polychlorinated biphenyls (PCBs).

38.    Hazardous wastes within the meaning of section 1004(5) of RCRA, 42 U.S.C. § 6903(5), that have been released into, and detected in, groundwater beneath the Laboratory include explosives, such as RDX; volatile organic compounds such as trichloroethylene, dichloroethylene, and dichloroethane; metals such as molybdenum, manganese, beryllium, lead,

cadmium, hexavalent chromium, and mercury; and perchlorate. Hazardous wastes and hazardous constituents have been detected beneath LANL in all four groundwater zones.

39. The New Mexico Environment Department determined that corrective action at LANL was necessary to protect human health and the environment. Compliance Order on Consent § II (Mar. 1, 2016) (discussed below).

**B.**    *The March 1, 2005 Consent Order*

40. On March 1, 2005, following a period of litigation in federal and State court and lengthy settlement negotiations, the New Mexico Environment Department, DOE, and The Regents of the University of California (predecessor to LANS as operator of Los Alamos National Laboratory) entered into a Compliance Order on Consent ("Consent Order"). The stated purposes of the Consent Order were to fully determine the nature and extent of environmental contamination at LANL, to identify and evaluate alternatives for the cleanup of environmental contamination, and to implement cleanup. Consent Order § III.A.

41. The Consent Order has been modified twice, on June 18, 2008, and on October 29, 2012, to revise the deadlines and make other revisions.

42. The Consent Order expressly states that it fulfills the requirements for corrective action for releases of hazardous waste or hazardous waste constituents under, among other provisions, sections 3004(u) and (v) of RCRA, 42 U.S.C. § 6924(u), (v); the HWA, N.M. Stat. Ann. § 74-4-4(A)(5)(h), (i); and the regulations at 40 C.F.R. §§ 264.100, 264.101 (incorporated by 20.4.1.500 N.M. Admin. Code). Consent Order § III.A.

43. The Consent Order set forth a mandatory schedule for completing more than 80 specific corrective action tasks for the investigation and cleanup of environmental contamination at LANL, Consent Order § XII. The final corrective action compliance date, for submission to

the Environment Department of a remedy completion report for MDA G, was December 6, 2015. *Id.* § XII, Tables XII-2, XII-3 (Oct. 29, 2012).

44.     The Consent Order allows DOE and LANS to seek an extension of time in which to perform a requirement of the Consent Order by making a written request to the Environment Department and showing good cause.  The Environment Department then has ten business days to either grant or deny the extension in writing.  If the Environment Department does not respond to the request within 10 days, the request is automatically granted.  Consent Order § III.J.2. Many of the deadlines in the Consent Order schedules have been extended pursuant to this provision, and, in fact, DOE and LANS have requested extensions for all of the most recent deadlines applicable to the violations claimed below.  In each such case, for all of the violations claimed herein -- excepting that of the Remedy Completion Report for MDA G at TA-54, for which the deadline expired without the DOE and LANS making a request for an extension -- the Environment Department denied the request, leaving no factual doubt as to the existence of any of these violations.

45.     In the Consent Order, the State of New Mexico expressly states that each requirement of the Consent Order is an enforceable "requirement" of RCRA within the meaning of the citizen suit provision at section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A).  The State also states in the Consent Order that citizens may sue to enforce the requirements of the Consent Order pursuant to the citizen suit provision at section 7002(a) of RCRA, 42 U.S.C. § 6972(a), if DOE and the University of California (predecessor to LANS) violate those requirements. Consent Order § III.U.

**FIRST CLAIM FOR RELIEF:**
**VIOLATION OF INTERIM COMPLIANCE DATES**

46.     Nuclear Watch New Mexico realleges Paragraphs 1 through 45 as if fully set forth below.

47.     <u>First violation:</u> Under the Consent Order, DOE and LANS were scheduled to submit to the Environment Department the Remedy Completion Report for MDA A at TA-21 (SWMU 21-014) on March 11, 2011.  Consent Order § XII, Tables XII-2, XII-3.  This report was recast as a "Phase II Investigation/Remediation Report," and the March 11, 2011 deadline was extended three times at the request of DOE and LANS.  By letter dated November 13, 2009, the Environment Department extended the deadline until May 31, 2012; by letter dated February 9, 2011, the Environment Department extended the deadline until December 20, 2013; and by letter dated January 2, 2014, the Environment Department extended the deadline until June 30, 2014.  By letter dated June 18, 2014, the Environment Department denied a fourth extension request.  As of this date, DOE and LANS have not submitted to the Environment Department a Remedy Completion Report (or Phase II Investigation/Remediation Report) for MDA A.

48.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the June 30, 2014 deadline that they failed to submit to the Environment Department a Remedy Completion Report for MDA A.

49.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the remedy and to submit to the Environment Department a Remedy Completion Report for MDA A.

50.     <u>Second violation:</u> Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the Environment Department's letter approving

12

the Investigation Work Plan for the Cañon de Valle Aggregate Area, dated February 9, 2007, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Cañon de Valle Aggregate Area at TA-15 on June 15, 2012.  This deadline was extended twice at the request of DOE and LANS.  By letter dated July 28, 2011, in response to a claim of *force majeure*, the Environment Department extended the deadline until July 2, 2012; and by letter dated December 14, 2011, the Environment Department extended the deadline until July 2, 2014.  By letter dated July 10, 2014, the Environment Department denied a third extension request.  As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-15.

51.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the July 2, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-15.

52.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-15.

53.     <u>Third violation</u>: Under the Consent Order, DOE and LANS were required to submit to the Environment Department work plans for the installation of regional groundwater monitoring wells.  Consent Order § IV.  According to the Environment Department's letter approving the Drilling Work Plan for Regional Aquifer Wells MW-14 (R-64) and MW-10 (R-65), dated March 18, 2011, DOE and LANS were scheduled to complete the installation of monitoring Well R-65 into the regional aquifer by September 30, 2011.  This deadline was

13

extended several times at the request of DOE and LANS.  By letter dated July 28, 2011, in response to a claim of *force majeure*, the Environment Department extended the deadline for completing monitoring Well R-65 until October 30, 2011.  By letter dated September 12, 2011, the Department reversed the deadlines for completing Wells R-65 and R-66, thus extending the deadline for completion of monitoring Well R-65 until December 6, 2011.  On information and belief, the Environment Department sent a letter that extended the deadline for completing monitoring Well R-65 until January 15, 2012.  By letter dated November 18, 2011, the Department extended the deadline for completing monitoring Well R-65 until January 15, 2014.  By letter dated January 8, 2014, the Department extended the deadline for completing monitoring Well R-65 until June 30, 2014.  On June 25, 2014, the Environment Department denied a subsequent request to extend the deadline for completing monitoring Well R-65.  As of this date, DOE and LANS have not completed the installation of regional monitoring Well R-65.

54.     Under the Consent Order, DOE and LANS were required to submit to the Environment Department a Well Completion Summary Fact Sheet describing the installation of monitoring Well R-65 within 30 days after completion of the installation or, given the last extension, on July 30, 2014.  Consent Order § XII, Table XII-4.  As of this date, DOE and LANS have not submitted to the Environment Department a Well Completion Summary Fact Sheet for monitoring Well R-65.

55.     Under the Consent Order, DOE and LANS were required to submit to the Environment Department a Well Completion Report describing in greater detail the installation of monitoring Well R-65 within 150 days after completion of the installation or, given the last extension, on November 30, 2014.  Consent Order § XII, Table XII-4.  As of this date, DOE and

LANS have not submitted to the Environment Department a Well Completion Report for monitoring Well R-65.

56.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the July 30, 2014 deadline that they failed to submit to the Environment Department a Well Completion Summary Fact Sheet for monitoring Well R-65, and for each day after the November 30, 2014 deadline that they failed to submit to the Environment Department a Well Completion Report for monitoring Well R-65.

57.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the installation of monitoring Well R-65 into the regional aquifer, to submit to the Environment Department a Well Completion Summary Fact Sheet for Well R-65 within 30 days after completion of the installation, and to submit to the Environment Department a Well Completion Report for monitoring Well R-65 within 150 days after completion of the installation.

58.     Fourth violation: Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the Environment Department's letter approving the Investigation Work Plan for the Lower Pajarito Canyon Aggregate Area, dated December 8, 2010, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Lower Pajarito Canyon Aggregate Area on July 31, 2012.  This deadline was extended once at the request of DOE and LANS.  By letter dated November 23, 2011, the Environment Department extended the deadline until July 31, 2014.  By letter dated July 22, 2014, the Environment Department denied a second request to extend this deadline.  As

of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Lower Pajarito Canyon Aggregate Area.

59.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the July 31, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Lower Pajarito Canyon Aggregate Area.

60.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Lower Pajarito Canyon Aggregate Area.

61.     <u>Fifth violation:</u> Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the approved Investigation Work Plan for the Twomile Canyon Aggregate Area, dated January 31, 2010, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Twomile Canyon Aggregate Area on August 15, 2012.  This deadline was extended twice at the request of DOE and LANS.  By letter dated July 28, 2011, in response to a claim of *force majeure*, the Environment Department extended the deadline until August 30, 2012; and by letter dated November 23, 2011, the Department extended the deadline until August 30, 2014.  By letter dated July 22, 2014, the Environment Department denied a third request to extend this deadline. As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Twomile Canyon Aggregate Area.

62.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the August 30, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Twomile Canyon Aggregate Area.

63.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Twomile Canyon Aggregate Area.

64.     Sixth violation: Under the Consent Order, DOE and LANS were scheduled to submit to the Environment Department the Investigation Work Plan for the Lower Water/Indio Canyon Aggregate Area on September 30, 2012.  Consent Order § XII, Tables XII-2, XII-3. This deadline was extended once at the request of DOE and LANS.  By letter dated December 5, 2011, the Environment Department extended the deadline until September 30, 2014.  By letter dated September 23, 2014, the Environment Department denied a second request to extend the deadline.  As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Work Plan for the Lower Water/Indio Canyon Aggregate Area.

65.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the September 30, 2014 deadline that they failed to submit to the Environment Department an Investigation Work Plan for the Lower Water/Indio Canyon Aggregate Area.

66.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to submit to the Environment Department an Investigation Work Plan for the Lower Water/Indio Canyon Aggregate Area and to implement the work plan.

17

67.     Seventh violation: Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the Environment Department's letter approving the Investigation Work Plan for the Cañon de Valle Aggregate Area, dated February 9, 2007, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Cañon de Valle Aggregate Area at TA-16 on December 15, 2012.  This deadline was extended once at the request of DOE and LANS.  By letter dated June 11, 2012, the Environment Department extended the deadline until December 15, 2014.  By letter dated December 19, 2014, the Environment Department denied a second request to extend the deadline.  As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-16.

68.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the December 15, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-16.

69.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Cañon de Valle Aggregate Area at TA-16.

70.     Eighth violation: Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the Environment Department's letter directing DOE and LANS to modify the Upper Water Canyon Investigation Work Plan  (Revision 1) ,

dated February 18, 2011, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Upper Water Canyon Aggregate Area on December 31, 2012.  This deadline was extended once at the request of DOE and LANS.  By letter dated June 15, 2012, the Environment Department extended the deadline until December 31, 2014.  By letter dated December 29, 2014, the Environment Department denied a second request to extend the deadline.   As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Upper Water Canyon Aggregate Area.

71.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the December 31, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Upper Water Canyon Aggregate Area.

72.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Upper Water Canyon Aggregate Area.

73.     Ninth violation: Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the Environment Department's letter approving the Investigation Work Plan for the Starmer/Upper Pajarito Canyon Aggregate Area, dated March 29, 2011, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Starmer/Upper Pajarito Canyon Aggregate Area on December 31, 2012.  This deadline was extended once at the request of DOE and LANS.  By letter dated June 22, 2012, the Environment Department extended the deadline until December 31, 2014. By letter dated December 29, 2014, the Environment Department denied a second request to extend the

19

deadline.  As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Starmer/Upper Pajarito Canyon Aggregate Area.

74.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the December 31, 2014 deadline that they failed to submit to the Environment Department an Investigation Report for the Starmer/Upper Pajarito Canyon Aggregate Area.

75.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Starmer/Upper Pajarito Canyon Aggregate Area.

76.     Tenth violation: Under the Consent Order, DOE and LANS were required to submit to the Environment Department work plans for the installation of intermediate groundwater monitoring wells.   Consent Order § IV.   According to the Environment Department's letter approving the Drilling Work Plan for Perched-Intermediate Well R-26i, dated August 8, 2012, DOE and LANS were scheduled to complete the installation of monitoring Well R-26i into the intermediate perched aquifer by October 31, 2013.  This deadline was extended twice at the request of DOE and LANS.  By letter dated January 2, 2014, the Environment Department extended the deadline for  completion of monitoring Well R-26i until May 31, 2014.  Because the Environment Department did not respond to a second extension request within ten business days, effective on May 30, 2014, the deadline for completion of monitoring Well R-26i was automatically extended until December 31, 2014.  By letter dated December 31, 2014, the Environment Department denied a third request for extension of the

deadline for completion of monitoring Well R-26i.  As of this date, DOE and LANS have not completed the installation of intermediate monitoring Well R-26i.

77.     Under the Consent Order, DOE and LANS were required to submit to the Environment Department a Well Completion Summary Fact Sheet describing the installation of monitoring Well R-26i within 30 days after completion of the installation or, given the last extension, on January 30, 2015.  Consent Order § XII, Table XII-4.  As of this date, DOE and LANS have not submitted to the Environment Department a Well Completion Summary Fact Sheet for monitoring Well R-26i.

78.     Under the Consent Order, DOE and LANS were required to submit to the Environment Department a Well Completion Report describing in greater detail the installation of monitoring Well R-26i within 150 days after completion of the installation or, given the last extension, on May 30, 2015.  Consent Order § XII, Table XII-4.  As of this date, DOE and LANS have not submitted to the Environment Department a Well Completion Report for monitoring Well R-26i.

79.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the January 30, 2015 deadline that they failed to submit to the Environment Department a Well Completion Summary Fact Sheet for monitoring Well R-26i, and for each day after the May 30, 2015 deadline that they failed to submit to the Environment Department a Well Completion Report for monitoring Well R-26i.

80.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the installation of monitoring Well R-26i into the regional aquifer, to submit to the Environment Department a Well Completion

Summary Fact Sheet for Well R-26i within 30 days after completion of the installation, and to submit to the Environment Department a Well Completion Report for monitoring Well R-26i within 150 days after completion of the installation.

81.     Eleventh violation: Under the Consent Order, DOE and LANS were scheduled to submit to the Environment Department the Remedy Completion Report for MDA AB, Areas 1, 3, 4, 11, and 12 at TA-49 (SWMUs 49-001(a-g) and 49-003, and AOC C-49-008(d)) on January 31, 2015.  By letter dated February 3, 2015, the Environment Department denied a request for an extension of this deadline.   As of this date, DOE and LANS have not submitted to the Environment Department a Remedy Completion Report for MDA AB, Areas 1, 3, 4, 11, and 12.

82.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the January 31, 2015 deadline that they failed to submit to the Environment Department a Remedy Completion Report for MDA AB, Areas 1, 3, 4, 11, and 12.

83.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the remedy and to submit to the Environment Department a Remedy Completion Report for MDA AB, Areas 1, 3, 4, 11, and 12.

84.     Twelfth violation: Under the Consent Order, the investigation work plan for each aggregate area must include a schedule for submittal of the investigation report.  Consent Order § XII, Tables XII-2 n. 2, XII-3 n. 2.  According to the approved Revised Investigation Work Plan for the Chaquehui Canyon Aggregate Area, dated November 1, 2010, DOE and LANS were scheduled to submit to the Environment Department the Investigation Report for the Chaquehui Canyon Aggregate Area on March 31, 2013.  This deadline was extended once at the request of DOE and LANS.  By letter dated June 26, 2012, the Environment Department extended the

deadline until March 31, 2015.  By letter dated March 3, 2015, the Environment Department denied a second request for an extension of this deadline.  As of this date, DOE and LANS have not submitted to the Environment Department an Investigation Report for the Chaquehui Canyon Aggregate Area.

85.     Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the March 31, 2015 deadline that they failed to submit to the Environment Department an Investigation Report for the Chaquehui Canyon Aggregate Area.

86.     Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the investigation and to submit to the Environment Department an Investigation Report for the Chaquehui Canyon Aggregate Area.

87.     By letter dated May 5, 2016, the plaintiff, Nuclear Watch New Mexico, gave notice of the violations alleged above to the Administrator of EPA*, the Regional Administrator of EPA Region VI, the Attorney General of the United States*, the United States Attorney for the District of New Mexico, the New Mexico Attorney General, the United States Secretary of Energy* (for DOE), LANS, and the Secretary of the New Mexico Environment Department by certified mail or by personal service ("*") pursuant to section 7002(b)(1)(A) of RCRA, 42 U.S.C. § 6972(b)(1)(A).  As of May 12, 2016, all addressees had received the letter.

**SECOND CLAIM FOR RELIEF:**
**VIOLATION OF FINAL COMPLIANCE DATE**

88.     Nuclear Watch New Mexico realleges Paragraphs 1 through 45 as if fully set forth below.

89.     Under the Consent Order, DOE and LANS were scheduled to submit to the Environment Department the Remedy Completion Report for MDA G at TA-54 on December 6,

2015.  This deadline is the final compliance date for all corrective action at LANL under the Consent Order.  As of this date, DOE and LANS have not submitted to the Environment Department a Remedy Completion Report for MDA G.

90.    Pursuant to sections 3008(g) and 7002(a) of RCRA, 42 U.S.C. §§ 6928(g), 6972(a), DOE and LANS are jointly liable for a civil penalty not to exceed $37,500 for each day after the December 6, 2015 deadline that they failed to submit to the Environment Department a Remedy Completion Report for MDA G at TA-54.

91.    Pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), DOE and LANS are jointly liable for an injunction ordering them to complete the remedy and to submit to the Environment Department a Remedy Completion Report for MDA G at TA-54.

92.    By letter dated January 20, 2016, the plaintiff, Nuclear Watch New Mexico, gave notice of the violation alleged above to the Administrator of EPA, the Regional Administrator of EPA Region VI, the Attorney General of the United States, the United States Attorney for the District of New Mexico, the New Mexico Attorney General, the United States Secretary of Energy (for DOE), LANS, and the Secretary of the New Mexico Environment Department by certified mail pursuant to section 7002(b)(1)(A) of RCRA, 42 U.S.C. § 6972(b)(1)(A). As of February 17, 2016, all addressees had received the letter.

### THIRD CLAIM FOR RELIEF:
### COSTS OF LITIGATION

93.    Nuclear Watch New Mexico realleges Paragraphs 1 through 92 as if fully set forth below.

94.    Nuclear Watch New Mexico has incurred litigation costs, including reasonable attorney and expert witness fees, in the amount of at least $1,000.00, and is continuing to incur litigation costs.

95.     DOE and LANS are jointly liable for costs of litigation that Nuclear Watch New Mexico has incurred, including reasonable attorney and expert witness fees, under section 7002(e) of RCRA, 42 U.S.C. § 6972(e).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, Nuclear Watch New Mexico, respectfully requests that this Court enter a judgment against the Defendants, the United States Department of Energy and Los Alamos National Security, LLC, as follows:

1.     Enjoining the Defendants to take action to come into compliance with the March 1, 2005 Consent Order, as amended on October 29, 2012 according to a reasonable but aggressive schedule ordered by this Court;

2.     Imposing a civil penalty not to exceed $37,500 per day for each violation of the Consent Order;

3,     Awarding Nuclear Watch New Mexico its costs of litigation, including reasonable attorney fees and expert witness fees, in this action;

4.     Granting such other relief as this Court may deem just and proper.

Respectfully submitted:

NUCLEAR WATCH NEW MEXICO

BY: _____          _____
Jonathan M. Block, Eric D. Jantz,          John E. Stroud
Douglas Meiklejohn, Jaimie Park          Stroud Law Office
New Mexico Environmental Law Center          533 Douglas Street
1405 Luisa Street, Suite #5          Santa Fe, NM 87505-0348
Santa Fe, New Mexico  87505-4074          (505) 670-5639
(505) 989-9022          jestroud@comcast.net
jblock@nmelc.org

*Co-counsel for Plaintiff Nuclear Watch New Mexico*