IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **NUCLEAR WATCH NEW MEXICO,** ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| v. ) | No. 1:16-CV-00433-JCH-SCY |
| ) | |
| **UNITED STATES DEPARTMENT OF** ) | |
| **ENERGY,** ) | |
| ) | |
| and ) | |
| ) | |
| **LOS ALAMOS NATIONAL SECURITY, LLC,** ) | |
| ) | |
| *Defendants,* ) | |
| ) | |
| and ) | |
| ) | |
| **NEW MEXICO ENVIRONMENT DEPARTMENT,** ) | |
| ) | |
| *Intervenor.* ) | |

**NEW MEXICO ENVIRONMENT DEPARTMENT'S**
**SECOND MOTION TO DISMISS**

The New Mexico Environment Department ("NMED") hereby moves this Court to dismiss Plaintiff Nuclear Watch New Mexico's Fourth and Sixth Claims for Relief in the Second Amended Complaint (Doc. #42) ("Complaint") for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and, consequently, to dismiss Plaintiff's remaining claims for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and U.S. Const. art. III, § 2, cl. 2. As grounds for its Motion, NMED states as follows:

**INTRODUCTION**

NMED is an agency in the executive branch of the State of New Mexico, created by the New Mexico Legislature "to administer the laws and exercise the functions relating to the

environment." NMSA 1978, § 9-7A-3 (1991); Complaint ¶ 7. NMED regulates Defendants, the United States Department of Energy ("DOE") and Los Alamos National Security, LLC ("LANS"), under the authority of the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), and the New Mexico Hazardous Waste Act, NMSA 1978, §§ 74-4-1 to -17 ("HWA").

In its initial Complaint, filed on May 16, 2016 (Doc. #1) ("Initial Complaint"), Plaintiff sought relief based upon various alleged violations of a Compliance Order on Consent executed in 2005 ("2005 Consent Order") by NMED, DOE, and LANS. After the Initial Complaint was filed, NMED and DOE executed a subsequent Compliance Order on Consent[1] ("2016 Consent Order") on June 24, 2016, which superseded the 2005 Consent Order. In an attempt to maintain a justiciable controversy, Plaintiff filed its First Amended Complaint on August 19, 2016 (Doc. # 30), adding a third claim for relief seeking a declaratory judgment that the 2016 Consent Order is invalid. First Amended Complaint ¶ 107. NMED, DOE and LANS filed motions to dismiss the First Amended Complaint on August 31, 2016 (Doc. #31, Doc #33, Doc. #37). Pursuant to Fed. R. Civ. P. 15, Plaintiff filed its Second Amended Complaint on September 21, 2016 (Doc. #42) ("Complaint"), still seeking a declaratory judgment that the 2016 Consent Order is invalid, alleging that the execution of the 2016 Consent Order violated the HWA and the terms of the 2005 Consent Order, and alleging a number of violations of the 2005 Consent Order. However, the facts and authority alleged by the Plaintiff do not support such a judgment. Because the fourth and sixth claims for relief, relating to the execution and validity of the 2016 Consent Order, are without merit, Plaintiff's remaining claims are moot, being based entirely upon the superseded 2005 Consent Order. As a result, the Complaint should be dismissed in its entirety.

---

[1] Attached as NMED EXHIBIT 1 to NMED's Motion to Dismiss, filed August 31, 2016 (Doc #31).

## BACKGROUND

For purposes of this Motion, the following facts are accepted as true:

1. DOE owns, and DOE and LANS operate, the Los Alamos National Laboratory ("LANL"), the facility that is the subject of the 2005 and 2016 Consent Orders and the Complaint. LANL has been in operation since 1943, and was originally established for the development and assembly of an atomic bomb. Complaint ¶¶ 5, 6, 27. Current and past operations have included nuclear weapons design and testing; plutonium pit production; high explosives research, development, fabrication and testing; chemical and materials science research and development; laser design and development; and photographic processing. Complaint ¶ 27. As a result of these operations at LANL, the Defendants have generated, treated, stored, disposed of, and otherwise handled hazardous waste as defined by RCRA and the HWA. Complaint ¶ 34.

2. Following a determination by NMED that corrective action was necessary at LANL to protect human health and the environment, NMED entered into the 2005 Consent Order with DOE and LANS. Complaint ¶¶ 40-41. The purpose of the 2005 Consent Order was, among other things, to implement the remediation of hazardous waste releases at LANL. Complaint ¶ 41.

3. On June 24, 2016, NMED and DOE executed the 2016 Consent Order. The 2016 Consent Order expressly states that it supersedes the 2005 Consent Order, "and settles any outstanding alleged violations under the 2005 Consent Order." 2016 Consent Order § II.A; Complaint ¶¶ 48, 51. Plaintiff did not appeal the execution of the 2016 Consent Order. *See* NMSA 1978, § 74-4-14(A) ("Any person who is or may be affected by any final administrative action of . . . the secretary may appeal to the court of appeals for further relief within 30 days after the action.")

4. The general purposes of the 2016 Consent Order, as stated in that Order, are as follows:

> 1) provide a framework for current and future actions to implement regulatory requirements; 2) establish an effective structure for accomplishing work on a priority basis through cleanup campaigns with achievable milestones and targets; 3) drive toward cost-effective work resulting in tangible, measurable environmental clean-up; 4) minimize the duplication of investigative and analytical work and documentation and ensure the quality of data management; 5) set a structure for the establishment of additional cleanup campaigns and milestones as new information becomes available and campaigns are completed; 6) facilitate cooperation, exchange of information, and participation of the Parties; 7) provide for effective public participation; and 8) define and clarify its relationship to other regulatory requirements.

2016 Consent Order § II.B.

5. The guiding principles of the 2016 Consent Order include the performance of remediation work at LANL in a cost-effective and efficient way that provides full protection of human health and the environment, taking advantage of lessons learned both from previous work performed at LANL and nationally, and employing a transparent annual planning process. 2016 Consent Order § II.D.

## ARGUMENT

### I. Standard of Decision

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). For purposes of the motion, the well-pleaded factual allegations in the complaint are accepted as true, and are viewed in the light most favorable to the plaintiff. *See Mata v. Anderson*, 760 F.Supp.2d 1068, 1084 (D.N.M. 2009). However, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth." *Id. at* 664.

Moreover, in deciding a motion to dismiss, the Court should consider the "information contained in the complaint and documents appropriately subject to judicial notice." *Nichols v. Danley*, 266 F. Supp. 2d 1310, 1312 (D.N.M. 2003). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## II.     Plaintiff Fails to Allege Sufficient Facts and Authority to Support its Fourth and Sixth Claims for Relief

In its fourth claim for relief, Plaintiff alleges that the 2016 Consent Order could not be entered into "pursuant to the HWA and the terms of the 2005 Consent Order," and that "DOE and NMED are liable for an injunction restraining them" from implementation of the 2016 Consent Order until a public hearing has been held. Complaint ¶¶ 136, 137. In its sixth claim for relief, Plaintiff seeks a declaratory judgment that the 2016 Consent Order is invalid for failure to follow public participation requirements. Complaint ¶ 141. Both claims are premised on the allegation that the 2005 Consent Order incorporates public participation requirements from the HWA and the New Mexico Hazardous Waste Regulations. The 2016 Consent Order, according to Plaintiff, constitutes a modification of the 2005 Consent Order previously in effect, and thus, pursuant to the terms of the 2005 Consent Order incorporating the public participation requirements of the HWA and corresponding regulations, the 2016 Consent Order could not be entered into without a public hearing, Complaint ¶¶ 137, 141. Plaintiff further alleges that the 2016 Consent Order represents "an extension of the final compliance date"[2] of the 2005 Consent Order, which constitutes a "major modification" of the 2005 Consent Order, and therefore requires "a public hearing before approval pursuant to the HWA." Complaint ¶ 135.

---

[2] The 2005 Consent Order does not include a "final compliance date," and those words cannot be found within the four corners of the document. What Plaintiff appears to have done is to find the latest date in the compliance schedule tables of the 2005 Consent Order and infer that date, December 6, 2015, as the "final compliance date" within the meaning of 40 C.F.R. § 270.42. Complaint ¶ 105. Plaintiff provides no support for this erroneous construction.

Plaintiff's arguments fail because the 2016 Consent Order does not purport to *modify* the 2005 Consent Order; rather it *supersedes* it, as it is a new order that addresses corrective action obligations at LANL. Courts interpret consent orders as contracts, applying traditional principles of contract interpretation and looking to discern the intent of the parties as embodied by the express terms of the consent order. *See United States v. ITT Cont'l Baking Co.,* 420 U.S. 223, 236 (1975) (stating that "since consent decrees and orders have many of the attributes of ordinary contracts, they should be construed basically as contracts"); *United States v. Armour & Co.,* 402 U.S. 673, 681 (1971) (stating that "[c]onsent orders are entered into by parties to a case after careful negotiation has produced agreement on their precise terms" and thus "the scope of a consent decree must be discerned within its four corners"); *Delorme Publ. Co. v. ITC*, 805 F.3d 1328, 1331 (Fed. Cir. 2015) (interpretation of a consent order is a matter of law).

The 2016 Consent Order expressly states that it "supersedes the 2005 Compliance Order on Consent (2005 Consent Order) and settles any outstanding alleged violations under the 2005 Consent Order." 2016 Consent Order, § II.A. Because the 2005 Consent Order has been superseded by the 2016 Consent Order, the 2005 Consent Order is void and is no longer in effect. *See* HENRY CAMBELL BLACK ET AL., BLACK'S LAW DICTIONARY 1437 (6th ed. 1990) (to "superseded" is to "[o]bliterate, set aside, annul, replace, make void, inefficacious or useless, repeal"); *see also Shawnee Hosp. Auth. v. Dow Constr., Inc.*, 812 P.2d 1351, (Okla. 1990) ("Before full performance, contractual obligations may be discharged by a subsequent agreement whose effect is to alter, modify or supersede the terms of the original agreement or to rescind it altogether. A claim under an earlier contract will be governed by a later agreement if the latter operates to supersede or rescind the former. Where not expressly stated, the legal effect of the later contract on the former must be gathered from a four-corners' examination of the contractual instrument in question."); *Armor Holdings, Inc. v. Jim Layman & Assocs., LLC*, No. 5:05-CV-

6

180, 2006 U.S. Dist. LEXIS 18640, at *12-13 (W.D. Mich. Apr. 12, 2006) ("When a subsequent agreement supersedes a prior agreement, the prior agreement is abrogated. When parties abrogate or rescind an agreement by substituting a new agreement, it is implied that there is a restoration of the status quo and a mutual discharge from any obligations under the original agreement.") Thus, the provisions of the 2005 Consent Order can have no bearing on the validity of the 2016 Consent Order.

Plaintiff further alleges that the HWA requires a public hearing for a modification of a permit. Complaint ¶¶ 135-137. However, neither the 2005 Consent Order nor the 2016 Consent Order is a "permit" within the meaning of RCRA or the HWA. *See* NMSA 1978, § 74-4-10.E ("the secretary [of environment] may issue an order requiring corrective action, . . . or other response measure as he deems necessary to protect human health or the environment"). The triggering event that led to the 2005 Consent Order, and then ultimately the 2016 Consent Order, was NMED's May 2, 2002 issuance of a Determination of an Imminent and Substantial Endangerment to Health or the Environment Concerning the Los Alamos National Laboratory pursuant to NMSA 1978, Sections 74-4-10.1 and 74-4-13. That determination was then superseded by NMED's November 26, 2002 issuance of a Final Order under Sections 74-4-10.1 and 74-4-13 that contained investigation, monitoring and corrective action activities, and a schedule of implementation. The November 26, 2002 Final Order was contested in this Court, and that case was resolved by the negotiation and execution of the 2005 Consent Order.

Both the 2005 Consent Order and the 2016 Consent Order were issued under NMSA 1978, Section 74-4-10 as negotiated settlements in order to compel DOE to comply with mandatory corrective actions required for past ("legacy") releases at LANL. Further, both the 2005 Consent Order and the 2016 Consent Order are "enforceable documents" pursuant to 40 CFR 264.90(f) (and as defined by 40 CFR 270.1(c)(7)), as both documents encompass

alternative requirements for groundwater monitoring and corrective action for releases to groundwater. Such alternative requirements may permissively be contained in an enforceable document in lieu of a permit. In accordance with NMSA 1978, Section 74-4-10 and 40 CFR 270.16(e), the 2016 Consent Order includes both stipulated penalties, and the ability for NMED to enforce the provisions of the Order in state district court.

The RCRA Permit for LANL is a distinct and separate document from the 2016 Consent Order. Each document regulates separate and distinct activities under RCRA. While mandatory corrective actions for legacy releases are controlled by the 2016 Consent Order, the RCRA Permit governs new releases and newly discovered releases of hazardous waste or hazardous constituents from hazardous waste management units at the Facility, newly created solid waste management units or areas of concern from non-permitted operations, and any corrective action conducted to address releases that occur or are discovered after the date of termination of the 2016 Consent Order. *See* 2016 Consent Order VII.A. Upon termination of the 2016 Consent Order, any uncompleted corrective actions under that Order will be included in the Facility's RCRA Permit for further oversight. *See* 2016 Consent Order § VII.F.

The parties to the 2005 Consent Order agreed to supersede their initial agreement with a new consent order, and it is the terms of that new agreement, the 2016 Consent Order, that now control. While the 2016 Consent Order provides for a public hearing process associated with remedy selection, 2016 Consent Order § XVII.A, that process does not apply to the execution of the document itself. Further, it should be noted that no public hearing was held in relation to the execution of the 2005 Consent Order, nor was one required.

Plaintiff alleges no facts and provides no authority that would preclude NMED and DOE from agreeing to supersede their first agreed-upon order with a different agreed-upon order. Further, Plaintiff's unsupported conclusory allegation that a public hearing was required before

the 2016 Consent Order could be executed is without merit. Therefore, Plaintiff's fourth and sixth claims for relief fail as a matter of law.

### III.     Plaintiff's First, Second, Third and Fifth Claims for Relief are Moot

"Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1109 (10th Cir. 2010). If a case is moot, federal courts have no subject-matter jurisdiction. *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016). "Constitutional mootness doctrine is grounded in the Article III requirement that federal courts may only decide actual ongoing cases or controversies." *Unified Sch. Dist. No. 259 v. Disability Rights Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007). "Even where litigation poses a live controversy when filed, the doctrine requires a federal court to refrain from deciding it if events have so transpired that the decision will neither presently affect the parties rights nor have a more-than-speculative chance of affecting them in the future." *Clarke v. United States*, 915 F.2d 699, 701, 286 U.S. App. D.C. 256 (D.C. Cir. 1990) (en banc) (internal quotations omitted).

Plaintiff's first, second, third and fifth claims for relief are based exclusively on alleged violations of the 2005 Consent Order. Complaint ¶¶ 54-133, 138-139. Because the 2005 Consent Order is now void, and because the 2016 Consent Order "settles any outstanding alleged violations under the 2005 Consent Order," 2016 Consent Order § II.A., there can be no remaining violations of the 2005 Consent Order. Plaintiff lists no facts and provides no authority that would preclude NMED from settling any outstanding alleged violations under the 2005 Consent Order through execution of the 2016 Consent Order. Thus, the execution of the 2016 Consent Order rendered Plaintiff's first, second, third and fifth claims moot. *See, e.g., First Nat'l Bancshares v. Geisel*, 853 F.Supp. 1337, 1343 (D. Kan. 1994) (where a later agreement provided that it amended, supplemented, and superseded a previous agreement, and assuming the later

agreement was enforceable, the later agreement would render claims based on earlier agreement moot); *Simplexity, LLC v. Zeinfeld*, 2013 WL 5702374 (Del. Ch. Oct. 17, 2013) (dismissing claims based on a memorandum of understanding as moot where the MOU had been entirely superseded by a later agreement).

There is no longer a controversy between the parties, and this Court no longer has subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and U.S. Const. art. III, § 2, cl. 2. Therefore this Court should dismiss Plaintiff's first, second, third and fifth claims for relief pursuant to Fed. R. Civ. P. 12(b)(1).

Pursuant to D.N.M.LR-Civ. 7.1(a), counsel for NMED has conferred with counsel for Defendants DOE and LANS concerning the Department's Motion to Dismiss. Counsel for Defendant DOE does not oppose the Department's Motion to Dismiss; Counsel for Defendant LANS does not oppose the Department's Motion to Dismiss. Counsel for Plaintiff Nuclear Watch New Mexico opposes the Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Second Amended Complaint in its entirety.

Respectfully submitted,

October 21, 2016                    __/s/ John B. Verheul _____
 John B. Verheul
 Assistant General Counsel
 Special Assistant Attorney General
 New Mexico Environment Department
 Office of General Counsel
 Post Office Box 5469
 Santa Fe, New Mexico  87502
 Phone: (505) 383-2063
 Fax: (505) 827-1628
 Email: john.verheul@state.nm.us

 *Counsel for the New Mexico Environment Department*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 21, 2016, a true and correct copy of the foregoing was served via the Court's electronic system upon the following counsel of record:

| | |
|---|---|
| Jonathan M. Block<br>Eric D. Jantz<br>Douglas Meiklejohn<br>New Mexico Environmental Law Center<br>1405 Luisa Street, Suite #5<br>Santa Fe, NM 87505-4074<br>jblock@nmelc.org<br>ejantz@nmelc.org<br>dmeiklejohn@nmelc.org | Paul P. ("Skip") Spaulding, III<br>Morgan Todd Jackson<br>FARELLA BRAUN + MARTEL, LLP<br>Russ Building<br>235 Montgomery Street<br>San Francisco, CA 94104<br>sspaulding@fbm.com<br>mjackson@fbm.com |
| John E. Stroud<br>Stroud Law Office<br>533 Douglas Street<br>Santa Fe, NM 87505-3048<br>jestroud@comcast.net<br><br>*Attorneys for Nuclear Watch New Mexico* | Timothy A. Dolan<br>Office of Laboratory Counsel<br>LOS ALAMOS NATIONAL SECURITY, LLC<br>P.O. Box 1663, MS A187<br>Los Alamos, NM 87545<br>tdolan@lanl.gov<br><br>*Attorneys for Los Alamos National Security, LLC* |
| Jeffrey J. Wechsler<br>Louis W. Rose<br>MONTGOMERY & ANDREWS, P.A.<br>P.O. Box 2307<br>Santa Fe, NM 87504-2307<br>jwechsler@montand.com<br>lrose@montand.com | Eileen T. McDonough<br>Environmental Defense Section<br>Environment and Natural Resources Division<br>United States Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044<br>eileen.mcdonough@usdoj.gov<br><br>*Attorney for United States Department of Energy* |

                                        __/s/ John Verheul_____
                                        John B. Verheul