# Exhibit A

## to the

Declaration of Timothy A. Dolan in Support of
Defendant Los Alamos National Security, LLC's
Request For Judicial Notice in Support of
Defendant Los Alamos National Security, LLC's
Motions To Dismiss Plaintiff's Second Amended Complaint
or Alternatively for Court Abstention

**STATE OF NEW MEXICO**

**ENVIRONMENT DEPARTMENT**

**IN THE MATTER OF:**

| | | |
|---|---|---|
| **THE UNITED STATES DEPARTMENT** | ) | **COMPLIANCE ORDER** |
| **OF ENERGY AND THE REGENTS OF THE** | ) | **ON CONSENT** |
| **UNIVERSITY OF CALIFORNIA** | ) | |
| | ) | |
| | ) | **PROCEEDING UNDER** |
| | ) | **THE NEW MEXICO** |
| **LOS ALAMOS NATIONAL LABORATORY** | ) | **HAZARDOUS WASTE** |
| **LOS ALAMOS COUNTY, NEW MEXICO,** | ) | **ACT § 74-4-10 AND THE** |
| | ) | **NEW MEXICO SOLID** |
| **RESPONDENTS.** | ) | **WASTE ACT § 74-9-36(D)** |

# MARCH 1, 2005
# (Revised October 29, 2012)

# I.   INTRODUCTION

This Compliance Order on Consent (Consent Order) is issued pursuant to the New Mexico Hazardous Waste Act (HWA), NMSA 1978, § 74-4-10, and entered into by the Secretary of the New Mexico Environment Department (NMED or the Department), Respondent the United States Department of Energy (DOE), and Respondent The Regents of the University of California (University of California).  This Consent Order is also issued pursuant to the New Mexico Solid Waste Act (SWA), NMSA 1978, § 74-9-36(D), for the purpose of addressing the requirements concerning groundwater contaminants listed at 20.6.2.3103 NMAC, toxic pollutants listed at 20.6.2.7.VV NMAC, Explosive Compounds as defined herein, nitrate, and perchlorate that are set forth in this Consent Order.

This Consent Order contains investigation, cleanup, including corrective action, and other requirements for the Los Alamos National Laboratory (the Facility), which is owned and operated by DOE and co-operated by the University of California.  The Consent Order is divided into 13 Sections.  Section I provides an introduction.  Section II sets forth the Department's findings of fact and conclusions of law in support of this Consent Order.  Section III contains general provisions, such as purposes, definitions, jurisdiction, stipulated penalties, force majeure, dispute resolution, covenant not to sue, reservation of rights and defenses, enforcement, integration with permit, and land transfer.  Section IV sets forth the requirements, other than those in Sections V and VI, for a comprehensive investigation of environmental contamination at the Facility.  It is divided into three subsections, addressing general Facility-wide investigations, investigations of separate watersheds within the Facility, and investigations of individual technical areas (TAs) at the Facility.  Section V provides for the investigation of newly identified SWMUs, AOCs, and releases, which are not otherwise addressed pursuant to Sections IV and VI.  Section VI provides for the completion of investigations that are currently underway for several waste management units at the Facility.  Section VII provides for the identification of cleanup alternatives and the implementation of cleanup measures for the Facility.  Section VIII establishes screening and cleanup levels for Contaminants at the Facility.  Section IX sets forth methods and procedures for investigation, sampling, and analysis.   Section X establishes requirements for groundwater monitoring well construction.   Section XI sets forth the requirements for various reports to be submitted to the Department.  Section XII establishes the schedule for implementation of the Consent Order.  Finally, Section XIII contains the effective date of the Consent Order.

The requirements of this Order do not apply to radionuclides, including, but not limited to, source, special nuclear, or byproduct material as defined in the Atomic Energy Act of 1954, as amended, or the radioactive portion of mixed waste.  The requirements of this Order do apply, however, to the hazardous waste component of mixed waste.

This Consent Order has been negotiated in good faith and is entered into by the signatories hereto without the admission or adjudication of any issue of fact or law, and with the intent that the Parties will act in good faith to implement the terms and requirements of the Consent Order.  The actions undertaken by Respondents in accordance with this Consent Order do not constitute

an admission of any liability, or any agreement with any Findings of Fact or Conclusions of Law contained in this Consent Order.  Respondents do not admit, and retain the right to controvert in any subsequent proceedings, other than proceedings to implement or enforce this Consent Order, the validity of the Findings of Facts and Conclusions of Law in this Consent Order.  Respondents agree to comply with and be bound by the terms of this Consent Order and agree that they will not contest the basis or validity of this Consent Order.

## II.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

**II.A**  **FINDINGS OF FACT**

The Department makes the following findings of fact.

**II.A.1**  **The Parties**

1.  The New Mexico Environment Department is the department within the executive branch of the New Mexico State government charged with administration and enforcement of the HWA, NMSA 1978, § 74-4-10; the Hazardous Waste Regulations, 20.4.1 NMAC, and the SWA, NMSA 1978, § 74-9-36(D).

2.  The Respondent DOE is a department of the United States government, and is the owner and a co-operator of the Facility.  The Respondent University of California (the University) is the operating contractor for the Facility pursuant to a contract with DOE, and is a co-operator of the Facility.

**II.A.2**  **The Facility**

3.  The Facility, as defined in Section III.B of this Consent Order, is the Los Alamos National Laboratory (the "Facility") site.  That site currently comprises approximately 40 square miles (25,600 acres) and is located on the Pajarito Plateau in Los Alamos County in north central New Mexico, approximately 60 miles north-northeast of Albuquerque and 25 miles northwest of Santa Fe**.**  At one point during its history, the Facility comprised up to roughly 71 square miles (45,666 acres).  The Facility is surrounded by the Pueblo of San Ildefonso, Los Alamos County, Bandelier National Monument, Santa Fe National Forest, and Santa Fe County.

4.  The Pajarito Plateau is dissected by nineteen major surface drainages or canyons and their tributaries.  The canyons run roughly west to east or southeast.  From north to south, the most prominent canyons are Pueblo Canyon, Los Alamos Canyon, Sandia Canyon, Mortandad Canyon, Pajarito Canyon, Cañon de Valle and Water Canyon, Ancho Canyon, and Chaquehui Canyon.  These canyons drain into the Rio Grande, which flows along part of the eastern border of the Facility.

5.  Hydrogeologic investigations have identified four discrete hydrogeologic zones beneath the Pajarito Plateau on which the Facility is located:  (1) canyon alluvial systems; (2) intermediate perched water in the volcanic rocks (Tschicoma Formation and the Tshirege Member of the Bandelier Tuff); (3) canyon-specific intermediate perched water within the Otowi Member of the Bandelier Tuff, Cerros del Rio basalt and sedimentary units of the Puye Formation; and (4) the regional aquifer.

**II.A.3**               **Facility Operations**

6.      The Facility began operations in 1943 when the United States Army Manhattan Engineer District was established for the development and assembly of an atomic bomb.  Current and historic operations have included nuclear weapons design and testing; high explosives research, development, fabrication, and testing; chemical and material science research; electrical research and development; laser design and development; and photographic processing.

7.      The Facility is currently operated by DOE and the University.

8.      The Facility has been divided into numerous Technical Areas, or "TAs."  Currently, 49 TAs exist; however, many former TAs have ceased operations, have been combined with other TAs, or were cancelled before becoming operational.  Those TAs include, for example, TA-2, located in Los Alamos Canyon near the western boundary of the Facility; TA-3, located at the western boundary of the Facility; former TA-10, located north of the Facility in Bayo Canyon; TA-16, located on the southwestern side of the Facility; TA-21, located on DP Mesa on the northern side of the Facility; former TA-45, located north of the Facility in the Los Alamos township; TA-49, located on the southwestern boundary of the Facility on Frijoles Mesa; TA-50, located in the center of the Facility between Mortandad Canyon and Two Mile Canyon; and TA-54, located at the eastern end of Mesita del Buey on the eastern side of the Facility.

9.      For administration purposes, the Respondents have further categorized some of the areas within the TAs as "Material Disposal Areas" or "MDAs."  These include, for example, MDAs A, B, T, U, and V in TA-21; MDA C in TA-50; MDAs G, H, and L in TA-54.

10.     Water supply wells at the Facility, in Los Alamos County and on San Ildefonso Pueblo property withdraw water from the regional aquifer beneath the Pajarito Plateau.

**II.A.4**               **Waste Management**

11.     As a result of the Facility operations, from approximately 1943 to the present, the Respondents have generated, treated, stored, disposed of, and otherwise handled solid wastes, including hazardous wastes, hazardous waste constituents, and mixed wastes at the Facility.

12.     The Respondents have disposed of hazardous wastes, hazardous constituents and mixed waste at the Facility.  In addition, certain groundwater contaminants listed at 20.6.2.3103 NMAC, certain toxic pollutants listed at 20.6.2.7.VV NMAC, certain Explosive Compounds as defined herein, nitrates, and perchlorate are present in the environment at the Facility.  The Respondents have disposed of such wastes in septic systems, pits, surface impoundments, trenches, shafts, landfills, and waste piles at the Facility.  The Respondents have also discharged industrial wastewater and other waste from outfalls into many of the canyon systems at the Facility.

**II.A.5**                          **Releases of Contaminants**

13.     Waste management activities at the Facility have resulted in the release of hazardous wastes, hazardous waste constituents, mixed waste, certain groundwater contaminants listed at 20.6.2.3103 NMAC, certain toxic pollutants listed at 20.6.2.7.VV NMAC, certain Explosive Compounds as defined herein, nitrate, and perchlorate.

14.     Contaminants that have been released into, and detected in, soils and sediments at the Facility include, for example, explosives, such as RDX, HMX, TNT; volatile organic compounds and semi-volatile organic compounds; metals such as arsenic, barium, beryllium, cadmium, chromium, copper, lead, mercury, molybdenum, silver, and zinc; and PCBs.

15.     Contaminants that have been released into, and detected in, groundwater beneath the Facility include, for example, explosives, such as RDX; volatile organic compounds such as trichloroethylene, dichloroethylene, and dichloroethane; metals such as molybdenum, manganese, beryllium, lead, cadmium, and mercury; perchlorate; other inorganic contaminants such as ammonia, nitrate, and fluoride; and other contaminants. Contaminants have been detected beneath the Facility in all four groundwater zones.

**II.A.6**                          **Regulatory History of the Facility**

16.     On August 13, 1980, the Respondents submitted to the United States Environmental Protection Agency (EPA) a "Notification of Hazardous Waste Activity" for the Facility pursuant to Section 3010(a) of RCRA, 42 U.S.C. § 6930(a).

17.     By letter dated November 19, 1980, the Respondents submitted to EPA a Part A RCRA permit application for the Facility.  The Respondents also sent a copy of the Part A application to the Environmental Improvement Division of the New Mexico Department of Health and Environment, the predecessor to the Environment Department.  The application covered hazardous waste treatment, storage, and disposal activities at TA-54, and included some 129 hazardous waste streams.  The Respondents have revised the Part A permit application several times since it was first submitted, including, among other things, to notify the State that Respondents would not seek a permit for hazardous waste disposal activities at the Facility.  Respondents' most recent Part A permit revision was submitted to the Department in August 2002.

18.     On January 25, 1985, the State of New Mexico received from EPA authorization to implement its hazardous waste program under the HWA in lieu of the Federal program. 50 Fed. Reg. 1515 (Jan. 11, 1985).  Subsequent program revision applications were approved effective on April 10, 1990, July 25, 1990, December 4, 1992, August 23, 1994, December 21, 1994, July 10, 1995, January 2, 1996, March 10, 1997, and June 13, 1998. 40 C.F.R. § 272.1601.

19.     On November 8, 1989, the Department's predecessor agency issued a Hazardous Waste Facility Permit (Permit) to the Respondents to operate a hazardous waste treatment and storage facility at the Facility pursuant to Section 74-4-4.2 of the HWA.  The Permit

covered hazardous waste container storage areas at TA-16, TA-50, and TA-54, hazardous waste storage and treatment tanks at TA-54, and hazardous waste incinerators at TA-16 and TA-50. Two of the four treatment tanks at TA-54 were removed in accordance with an approved closure plan in 1996. The Department approved the closure report in 1997. The remaining two tanks were removed from the site in 2002. The Department has not approved the closure. The Respondents closed the incinerator at TA-16 in accordance with an approved closure plan, and the Department approved the Closure Certification Report in October 2001. Respondents closed the incinerator at TA-50 in accordance with an approved closure plan, and the Department approved the Closure Certification Report in July 1998.

20.     On July 25, 1990, the State of New Mexico received from EPA authorization to expand its hazardous waste program under the HWA in lieu of the federal program, including the authority to regulate the hazardous component of mixed waste. 55 Fed. Reg. 28397 (July 11, 1990).

21.     In the late 1980's, the Respondents identified for EPA "Potential Release Sites," including solid waste management units (SWMUs) and "areas of concern" (AOCs), where hazardous wastes, hazardous constituents, solid wastes, or mixed wastes may have been disposed. Of those sites, EPA identified over 1200 as sites to be investigated and included on the Hazardous and Solid Waste Amendments (HSWA) portion (known as the "HSWA Module") of the Facility's RCRA permit.

22.     On March 8, 1990, EPA issued to the Respondents the HSWA portion of the Permit, effective on May 23, 1990, covering those requirements of RCRA added by the HSWA of 1984. The EPA portion of the permit required corrective action for continuing releases of hazardous waste and hazardous waste constituents at and from the Facility pursuant to Section 3004(u) and (v) of RCRA, 42 U.S.C. § 6924(u) and (v).

23.     Effective January 2, 1996, the State of New Mexico received from EPA final authorization to implement its corrective action program under the HWA. See 60 Fed. Reg. 53,708 (Oct. 17. 1995); 61 Fed. Reg. 2450 (Jan. 26, 1996).

24.     Between 1995 and 1999, the Respondents submitted a Permit renewal application to the Department for permitted and interim status storage and treatment units at the Facility. The General Part B renewal application was initially submitted in August 1996; the TA-16 application for permitted and interim status units was initially submitted in June 1995; the TA-50 permit application for permitted and interim status units was initially submitted in January 1999; the TA-54 permit application for permitted and interim status units was initially submitted in January 1999; and the TA-55 permit application for interim status units was initially submitted in June 1996. Permit applications for interim status units at TA-3, TA-14, TA-36 and TA-39 were submitted to the Department in or before May 1999.

25. The Permit, which was originally set to expire in November 1999, was administratively extended pursuant to 20.4.1.900 NMAC (incorporating 40 C.F.R. § 270. 51), and it remains in effect.

## II.A.7                Procedural History of Consent Order

26. On May 2, 2002, pursuant to Sections 74-4-10.1 and 74-4-13 of the HWA, the Department issued a Determination of an Imminent and Substantial Endangerment to Health or the Environment Concerning the Los Alamos National Laboratory (the Determination), to DOE and the University.

27. On May 2, 2002, the Department also issued a draft order pursuant to Sections 74-4-10.1 and 74-4-13 of the HWA, called "In Re: Proceeding Under the New Mexico Hazardous Waste Act §§ 74-4-10.1 and 74-4-13" (Draft Order).  The Draft Order proposed a series of investigation and corrective action tasks for DOE and the University to complete at the Facility.

28. The Department provided notice and an opportunity to comment on the Draft Order.  The comment period extended for 90 days and ended on July 31, 2002.  During the public comment period, the Department held four public meetings to provide the public with information on the draft order.  The Department received comments from 38 persons, including the Respondents, on the Draft Order.

29. On June 3, 2002, the University filed a Complaint for Declaratory and Injunctive Relief and for Review of Agency Action in the United States District Court for the District of New Mexico (No. CIV 02-637 MV/DJS) challenging the Determination.  On June 3, 2003, the University and the United States each filed a Notice of Appeal with the New Mexico Court of Appeals (Ct. App. Nos. 23,172 and 23,173), challenging the Determination.

30. On October 9, 2002, the United States, on behalf of DOE, filed a Complaint in the United States District Court for the District of New Mexico (No. CIV 02-1273-LH/RHS), challenging the September 9, 2002 Installation Work Plan (IWP) Work Schedule issued by the Department.  The IWP Work Schedule imposed requirements similar to those contained in the Draft Order.

31. On November 26, 2002, the Department issued to the Respondents a Final Order called "Re: Proceeding Under the New Mexico Hazardous Waste Act §§ 74-4-10.1 and 74-4-13" (Final Order).  The Final Order contained a set of investigation, monitoring, and corrective action tasks and a schedule for implementation of those tasks. The Department also responded, in writing, to each of the public comments it had received on the Draft Order.  The Determination issued on May 2, 2002 was also withdrawn on November 26, 2002, and the findings and conclusions contained therein were incorporated into the Final Order.

32. On December 18, 2002, the University dismissed its complaint in the United States District Court challenging the Determination because the Department had withdrawn that Determination, as noted above.

33. On December 24, 2002, the United States filed an Amended Complaint, challenging both the 2002 IWP Work Schedule and the Final Order.  The United States also filed a Notice of Appeal in the New Mexico Court of Appeals (Ct. App. No. 23,693), challenging the Final Order

34. On December 26, 2002, the University filed a Complaint for Declaratory and Injunctive Relief and for Review of Agency Action in the United States District Court for the District of New Mexico (No. CIV 02-1631 LFG/WDS), challenging the Final Order.  On December 26, 2002, the University also filed a Notice of Appeal with the New Mexico Court of Appeals (Ct. App. No. 23,698) challenging the Final Order.

35. From December 2002 through December 2003 and from February through March 2004, the Parties engaged in settlement negotiations to resolve the issues raised by the United States' and the University's lawsuits.  To facilitate the settlement discussions, the Parties agreed to stay the pending litigation during the settlement process.

36. On April 25, 2003, the Department issued a Compliance Order HWB 03-02, alleging that the Department of Energy and the University failed to implement interim measures at the Airport Landfill, or SWMU 73-001(a), at the Facility.  Respondents answered the Compliance Order, denying the Department's allegations.  That action was also stayed during negotiations of this Consent Order.

37. This Consent Order is the result of the Parties' settlement negotiations.  In addition, as the result of those settlement negotiations and the execution of this Consent Order, the Department has agreed to withdraw the Determination, the Final Order, the Airport Landfill Order, and the 2002 IWP Work Schedule,  and the United States and the University have agreed to dismiss their lawsuits.  *See* Section III.R (Pending Actions).

38. On September 1, 2004, the Department released this Consent Order for public review and comment.  The Department placed a public notice of the availability of the proposed Consent Order in the local news outlets, and mailed copies of the notice to all interested parties.  The Department provided the public with a 30-day period to comment on the proposed Consent Order.  The comment period ended on October 1, 2004.  The Department received comments from 18 persons on the proposed Consent Order.  The Department is today responding, in writing, to each of those public comments.

**II.B**                                      **CONCLUSIONS OF LAW**

The Department makes the following conclusions of law:

1. Each of the Respondents, DOE and the University, is a "person" within the meaning of section 74-4-3(K) of the HWA, and the Hazardous Waste Regulations at 4.1.100 NMAC (incorporating 40 C.F.R. § 260.10).

2.      The Los Alamos National Laboratory is a "facility" within the meaning of the Hazardous Waste Regulations at 4.1.100 NMAC (incorporating 40 C.F.R. § 260.10).

3.      The Respondent DOE is an "owner" and an "operator" of the Facility within the meaning of the Hazardous Waste Regulations at 4.1.100 NMAC (incorporating 40 C.F.R. § 260.10).

4.      The Respondent University is an "operator" of the Facility within the meaning of the Hazardous Waste Regulations at 4.1.100 NMAC (incorporating 40 C.F.R. § 260.10).

5.      The Respondents have engaged in the "storage," "treatment," and "disposal" of "hazardous waste" at the Facility, and are currently engaged in the "storage" and "treatment" of "hazardous waste" at the Facility, within the meaning of section 74-4-3(P), (T), (E), and (K) of the HWA, and the Hazardous Waste Regulations at 20.4.1.100 NMAC (incorporating 40 C.F.R. § 260.10).

6.      The Department has determined that hazardous wastes and hazardous waste constituents have been "release[d]" from the Facility into the environment within the meaning of section 74-4-10(E) of the HWA.

7.      Pursuant to Section 74-4-10(A) of the HWA, the Department has determined that the Respondents may have violated 20.4.1.900 NMAC, incorporating by reference 40 C.F.R. § 270.33, Schedule of Compliance.

8.      Each of the Respondents is a "person" within the meaning of section 74-9-3(I) of the SWA.

9.      Groundwater contaminants listed at 20.6.2.3103 NMAC, toxic pollutants listed at 20.6.2.7.VV NMAC, Explosive Compounds as defined herein, perchlorate, and nitrates are solid wastes within the meaning of Section 74-9-3(N) of the SWA.

10.     The Department has determined that there is or has been a release of certain groundwater contaminants listed at 20.6.2.3103 NMAC, certain toxic pollutants listed at 20.6.2.7.VV NMAC, certain Explosive Compounds as defined herein, nitrate, and perchlorate into the environment requiring corrective action pursuant to section 74-9-36(D) of the SWA.

## III.  GENERAL PROVISIONS

**III.A**                    **PURPOSES AND SCOPE OF CONSENT ORDER**

The purposes of this Consent Order are:  1) to fully determine the nature and extent of releases of Contaminants at or from the Facility; 2) to identify and evaluate, where needed, alternatives for corrective measures, including interim measures, to clean up Contaminants in the environment, and to prevent or mitigate the migration of Contaminants at or from the Facility; and 3) to implement such corrective measures.

Except as provided in Section III.W.1, this Consent Order fulfills the requirements for: 1) corrective action for releases of hazardous waste or hazardous waste constituents under sections 3004(u) and (v) and 3008(h) of RCRA, 42 U.S.C. §§ 6924(u) and (v) and 6928(h), sections 74-4-4(A)(5)(h) and (i), 74-4-4.2(B), and 74-4-10(E) of the HWA, and their implementing regulations at 40 C.F.R. Part 264, subpart F (incorporated by 20.4.1.500 NMAC); 2) corrective action for releases of groundwater contaminants listed at 20.6.2.3103 NMAC, toxic pollutants listed at 20.6.2.7.VV NMAC, Explosive Compounds, nitrate, and perchlorate pursuant to section 74-9-36(D) of the SWA; 3) groundwater monitoring, groundwater characterization and groundwater corrective action requirements for regulated units under Subpart F and for miscellaneous units under Subpart X of 40 C.F.R. Part 264 and 20.4.1.500 NMAC (incorporating 40 C.F.R. Part 264); and 4) additional groundwater information required in Part B permit applications under 40 C.F.R. § 270.14(c) and (d)(3) and 40 C.F.R. § 270.23(b) (incorporated by 20.4.1.900 NMAC).

This Consent Order contains no requirements for radionuclides or the radioactive portion of mixed waste.  Therefore, any radionuclides found in any media at the Facility shall not be subject to this Consent Order or any enforcement action relating to this Consent Order.  Notwithstanding the foregoing, Respondents may voluntarily include in any plan, report or other document submitted pursuant to this Consent Order, including work plans, references to, or information concerning, radionuclides or the radioactive portion of mixed waste.  The voluntary inclusion of such radionuclide information by the Respondents in any plan, report or other document shall not be enforceable by any entity, including the State, under this Consent Order, because such information falls wholly outside the requirements of this Consent Order.

This Consent Order also imposes no requirements on any areas of concern ("AOCs") previously investigated by the Respondents and reviewed and determined by EPA to require no further investigation or other action; those AOCs are specifically identified in a letter from EPA, dated January 21, 2005, to the Department.

Section 1004(27) of RCRA, 42 U.S.C. § 6903(27) (and its implementing regulations at 40 C.F.R. § 261.4(a)(2)) and the HWA, NMSA 1978 § 74-4-3(M) (and its implementing regulations at 20.4.1.200 NMAC, incorporating 40 C.F.R. § 261.4(a)(2)) exclude from the definition of "solid waste" and thus exclude from regulation under the HWA or RCRA industrial discharges that are point sources subject to permits under section 402 of the Clean Water Act.  Solely for the purposes of this Consent Order, the Respondents shall not assert this exclusion in response to

enforcement of the specific requirements set forth in this Consent Order, or in a work plan approved under this Consent Order, for Contaminants existing at the Facility as of the effective date of this Consent Order. However, the Respondents reserve the right to assert the exclusion in response to any attempt to impose requirements, other than those set forth in this Consent Order, or to impose requirements for Contaminants resulting from industrial discharges that occur after the effective date of this Consent Order.

The application of this Consent Order to firing sites is as set forth in Section IV.A.5.

**III.B                   DEFINITIONS**

Unless otherwise expressly provided herein, the terms used in this Consent Order shall have the meanings set forth in the HWA, RCRA, and their implementing regulations.

"Administrative Record" means the administrative record supporting and otherwise relating to the requirements of this Consent Order, compiled as of the effective date of this Consent Order, which forms the basis for the terms of this Consent Order. The Administrative Record includes the full record relating to the Respondents' current Hazardous Waste Facility Permit (permit No. NM0890010515), and those documents submitted in writing by the Department, Respondents, or the public, as of the effective date of the Consent Order for inclusion in the Administrative Record. The Administrative Record is available for review at the Department's Hazardous Waste Bureau.

"Aggregate Area" means an area within a single watershed or canyon made up of one or more SWMUs or AOCs and the media affected or potentially affected by releases from those SWMUs or AOCs, and for which investigation or remediation, in part or in entirety, is conducted for the area as a whole in order to address area-wide contamination, ecological risk assessment, and other factors.

"Area of Concern" or "AOC" means any area that may have had a release of a hazardous waste or hazardous constituent, which is not a Solid Waste Management Unit.

"Consent Order" or "Order" means this Compliance Order on Consent.

"Contaminant" means any hazardous waste listed or identified as characteristic in 40 C.F.R. Part 261 (incorporated by 20.4.1.200 NMAC); any hazardous constituent listed in 40 C.F.R. Part 261, Appendix VIII (incorporated by 20.4.1.200 NMAC) and 40 C.F.R. Part 264, Appendix IX (incorporated by 20.4.1.500 NMAC); any groundwater contaminant listed in the WQCC Regulations at 20.6.2.3103 NMAC; any toxic pollutant listed in the WQCC Regulations at 20.6.2.7.VV NMAC; Explosive Compounds as defined herein; nitrate; and perchlorate. Contaminant does not include radionuclides or the radioactive portion of mixed waste.

"Day" means a calendar day, unless specified as a business day. "Business day" means Monday through Friday, excluding all federal and New Mexico State holidays.

"Department" means the New Mexico Environment Department, and any successor departments or agencies.

**First class mail address:**
Office of General Counsel
New Mexico Environment Department
Post Office Box 26110
Santa Fe, New Mexico 87502

**Overnight delivery address:**
Office of General Counsel
New Mexico Environment Department
1190 St. Francis Drive
Santa Fe, New Mexico 87501

.

**III.G.6                     Interest**

Interest shall accrue on all stipulated penalties not paid when due at the rate specified in 28 U.S.C. § 1961.  Interest shall accrue from the date the penalty is due until the date it is actually paid.

**III.G.7                     Reservation**

The Department reserves the right to seek other appropriate relief, in lieu of stipulated penalties under this section (III.G), for any failure of the Respondents to comply with any requirement, including schedules, of this Consent Order.   If, however, the Department elects to assess stipulated penalties pursuant to the provisions of this section (III.G), the State will not seek a separate civil penalty or other monetary relief for the alleged deficiency identified in the Department's notice pursuant to Section III.G.2.

**III.H            FORCE MAJEURE**

**III.H.1            General**

For the purposes of this Consent Order, "force majeure" shall mean any event arising from causes beyond the reasonable control of the Respondents or their respective agents, contractors, or employees that delays or prevents the performance of any of the obligations of the Respondents under this Consent Order and that could not be overcome by due diligence.  A force majeure shall not include unanticipated or increased costs or expenses associated with the implementation of this Consent Order.

**III.H.2            Examples of Force Majeure**

A force majeure could include, but is not limited to:

1.      Acts of God, natural disasters such as fire or flood, war, terrorism, insurrection, civil disturbance, or explosion;
2.      A federal government shut down, such as the ones that occurred in 1995 and 1996;

3.      Unanticipated breakage or accident to machinery, equipment or lines of pipe;

4.      Restraint by court order;

5.      Inability to obtain, at reasonable cost, any necessary authorizations, approvals, permits or licenses due to action or inaction of any governmental agency or authority other than DOE; and

6.      Delays caused by compliance with applicable statutes or regulations governing contracting, procurement or acquisition procedures.

The Parties recognize that the events set forth above are merely examples of potential force majeure.  Any force majeure claimed by the Respondents, whether identified in the above list or not, must meet the definition of force majeure in Section III.H.1.  The Department reserves its right to evaluate each force majeure claimed by Respondents and determine whether the facts associated with such claimed force majeure meet the definition of force majeure in Section III.H.1.  The Parties further agree that the absence of a type of force majeure from the list of examples set forth herein does not create any presumption or evidence that such event does not constitute a force majeure.

### III.H.3                    Procedure for Claiming Force Majeure

If any event occurs which causes or may cause a delay in, or which prevents or may prevent, the performance of any obligations of the Respondents under this Consent Order, the Respondents shall notify the Department orally, or in writing in accordance with Section III.L (Notice to Parties), within 72 hours of when the Respondents first knew that the event might cause a delay.  Within seven business days of the Respondents' verbal notification to the Department, the Respondents shall provide a written notice to the Department in accordance with Section III.L (Notice to Parties).  The notice shall describe in detail:  a) the cause or causes of the delay; b) the expected duration of the delay, including any obligations that would be affected; c) the actions taken or to be taken by the Respondents to prevent or minimize the delay; and d) the timetable by which those actions will be implemented.  The Respondents shall take all reasonable actions to prevent or minimize any such delay.  The Respondents' failure to provide notice pursuant to the terms of this Paragraph shall constitute a waiver of any claim of force majeure as to the event in question.

The Department will notify the Respondents, in writing in accordance with Section III.L (Notice to Parties) whether it agrees or disagrees that a force majeure has occurred, and will provide such notice within seven business days after receipt of the Respondents' notice of the event.  If the Department agrees in writing that a delay or anticipated delay is attributable to a force majeure event, as defined in Section III.H.1, the time for performance of the affected obligation or obligations will be extended for a period not to exceed the actual delay resulting from the force majeure event, and stipulated penalties shall not be due for such delay.  If the Department does not agree that a delay or anticipated delay is attributable to a force majeure event, it will notify the Respondents in writing and provide the basis for its conclusion.

Associate Administrator for Infastructure and Environment of NNSA, and the Director of Los Alamos National Laboratory (the "Tier 3 Officials"). The Tier 3 Officials shall review the Parties' written statements of position and shall meet and confer in an attempt to resolve the dispute. The period for Tier 3 negotiations shall not exceed three business days from the date the Tier 3 Officials receive the statements, unless the period is extended by written agreement of the Parties to the dispute.

### III.I.5          Other Remedies

If the Parties are unable to resolve a dispute by Tier 3 negotiations under the preceding Paragraph, the Parties may agree to seek to resolve the dispute through non-binding mediation or another non-binding dispute resolution method, or the Parties may pursue any available legal remedy to resolve the dispute, which may include, for the Department, bringing an enforcement action or, for the Respondents, petitioning a court to resolve the matter. The decision or other action forming the basis of the dispute shall be deemed final for purposes of judicial review once the Tier 3 negotiations are complete.

### III.I.6          Extension of Deadlines

The deadline for any obligation of the Respondents under this Consent Order that is directly affected by a dispute raised pursuant to this section (III.I) shall be extended by a period of time not to exceed the actual time taken to resolve the dispute in accordance with the procedures of this section (III.I). The invocation of the dispute resolution process under this section (III.I) shall not, however, extend, postpone, or affect in any way any obligations of the Respondents under this Consent Order not directly in dispute, unless otherwise agreed by the Department in writing. Stipulated penalties attributable to the disputed matter shall continue to accrue, but payment shall be stayed pending resolution of the dispute. If the Department prevails in the dispute, the Respondents shall pay all accrued stipulated penalties, plus accrued interest, in accordance with Section III.G.

### III.J          MODIFICATION

### III.J.1          Procedures for Modifying Provisions of the Consent Order

The Parties may modify any of the provisions of this Consent Order. Except as provided in Sections III.L (Notice to Parties) and III.M (Work Plans and Other Deliverable Documents), any such modifications must be in writing and signed by all Parties. As provided in Section III.W.5, modifications of this Consent Order are subject to the same procedural rights that would apply to those modifications if made under the Facility's Hazardous Waste Permit pursuant to the regulations at 20.4.1.900 NMAC (incorporating 40 C.F.R. § 270.42) and 20.4.1.901 NMAC.

### III.J.2          Provisions Governing Extensions of Time

The Respondents may seek an extension of time in which to perform a requirement of this Consent Order, for good cause, by sending a written request for extension of time and proposed

revised schedule to the Department.  The request shall state the length of the requested extension and describe the bases for the request.  The Department will respond in writing to any request for extension within ten business days following receipt of the request.  If the Department denies the request for extension, it will state the reasons for the denial.  If the Department does not respond in writing within ten business days, the requested extension shall automatically be granted.

As set forth in Section III.M.2 (Review, Revision, and Approval of Work Plans and Other Deliverable Documents), a failure by the Department to meet the notice dates identified in Tables XII-2 and XII-3, shall result in an automatic extension of time for Respondents.

## III.K                          COMPLIANCE WITH APPLICABLE LAWS

### III.K.1                       General

The Respondents shall undertake all actions required by this Consent Order in accordance with the requirements of all applicable federal, state, and local laws and regulations.  Nothing in this Consent Order shall be construed as relieving the Respondents of their obligation to comply with applicable law.

### III.K.2                       Atomic Energy Act

The Atomic Energy Act (AEA), as amended, 42 U.S.C. §§ 2011 *et seq.*, and the Department of Energy Organization Act, 42 U.S.C. §§ 7101 *et seq.*, and their implementing regulations, orders and directives, require DOE to protect the public health and safety, and, to this end, exclusively authorize DOE to regulate nuclear safety at its facilities.  DOE's authority to regulate nuclear safety is governed by the provisions of 10 C.F.R. Parts 830 through 835.  Pursuant to those regulations, DOE is required to review and approve all activities and work, including activities and work under this Consent Order, to ensure that its statutory and regulatory responsibilities for nuclear safety are met.  In making determinations concerning nuclear safety, DOE follows the requirements of 10 C.F.R. Parts 830 through 835.  Nothing in this Consent Order shall require the performance of any work or activity that is inconsistent with any nuclear safety requirement implemented pursuant to 10 C.F.R. Parts 830 through 835.  If such an inconsistency arises, the Respondents shall provide appropriate documentation demonstrating the inconsistency to the Department.

### III.K.3                       Anti-Deficiency Act

No provision of this Consent Order shall be interpreted as, or constitute, a commitment or requirement that the United States shall obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.  Payment or obligation of funds by the United States is subject to the availability of appropriated funds.

## III.L                          NOTICE TO PARTIES

Whenever under the terms of this Consent Order, any Party is required to provide notice to any other Party, or to submit any plan, report, or other document called for under this Consent Order, such notice, plan, report or other document shall be sent or directed to the following persons.

III.P                              **AVAILABILITY OF INFORMATION**

In accordance with section 74-4-4.3 of the HWA, the Respondents shall, within a reasonable time after receipt of a request from any authorized representative of the Department, furnish information to the Department relating to hazardous wastes that are or have been managed at the Facility.

Nothing in this section (III.P) shall be construed to limit or impair in any way the information gathering authority of the Department under the HWA, the Hazardous Waste Regulations, RCRA, or any other applicable law or regulation.

III.Q                              **RECORD PRESERVATION**

Until ten years after the Respondents' receipt of the Department's written notice of termination of the Consent Order pursuant to Section III.E, the Respondents shall maintain all records, documents, data, and other information required to be prepared under this Consent Order.  The only exception to this requirement relates to those SWMUs for which a Class 3 permit modification for corrective action complete with or without controls has been granted by the Department pursuant to the Permit (see Section III.W Integration with Permit).  The record preservation requirements for such SWMUs shall be set forth in the Permit and those permit requirements shall control and supersede the requirements of this Section.  Nothing herein shall be construed as a waiver of any attorney client, work product or other privilege that the Respondents might otherwise possess.

III.R                              **PENDING ACTIONS**

Upon entry of this Consent Order, and in consideration of the Respondents' agreement to perform the work under this Consent Order, the Department hereby withdraws and vacates the following:  (i) the Final Order entitled "Order Proceeding Under the New Mexico Hazardous Waste Act §§ 74-4-10.1 and 74-4-13," issued to the Respondents on November 26, 2002; (ii) the September 9, 2002 revision of the Installation Work Plan ("IWP") Work Schedule; and (iii) the Compliance Order No. HWB 03-02 issued to the Respondents on April 25, 2003.

The United States and the University have filed lawsuits challenging the Section 13 Order and the 2002 IWP Work Schedule.  Given that this Consent Order vacates those actions, and thereby renders the lawsuits moot, the United States and the University will dismiss their respective federal and state court lawsuits, which are captioned as follows:  1) *United States v. Ron Curry* (Civil No. 03-1273 LH/RHS) (D.N.M.); 2) *United States v. Ron Curry* (Ct. App. No. 23,693) (N.M. Ct. App.); 3) *United States v. Ron Curry* (Ct. App. No. 23,496) (N.M. Ct. App.); 4) *The Regents of the University of California v. Ron Curry* (Civil No. 02-1631 LFG/WDS) (D.N.M.); 5) *The Regents of the University of California v. Ron Curry* (Ct. App. No. 23,698) (N.M. Ct. App.); and 6) *The Regents of the University of California v. Ron Curry* (Ct. App. No. 23,471) (N.M. Ct. App.).

**III.S**                    **STATE'S COVENANT NOT TO SUE**

In consideration of the actions that will be performed by the Respondents under the terms of this Consent Order, and except as specifically provided in Section III.T (State's Reservation of Rights), the State covenants not to sue or take administrative action against the Respondents, their respective officers, agents, successors, or assigns, under the HWA, the SWA, or RCRA, for matters addressed in this Consent Order. This covenant not to sue shall take effect upon the Effective Date of this Consent Order. This covenant not to sue extends only to the Respondents and their respective officers, agents, successors, and assigns and does not extend to any other person. This covenant not to sue shall survive the termination of this Consent Order.

**III.T**                    **STATE'S RESERVATION OF RIGHTS**

As provided in Section III.U, nothing herein shall prevent the State from seeking legal or equitable relief, either administratively or judicially, to enforce the requirements of this Consent Order. Moreover, nothing herein shall prevent the State from taking administrative action to implement the requirements of this Consent Order (e.g., approving or disapproving work plans, issuing certificates of completion). Finally, nothing herein shall prevent the State from taking appropriate action to address conditions at the Facility that constitute an emergency situation or that present an immediate threat to public health or the environment.

The covenant not to sue set forth in Section III.S does not pertain to any matters not addressed in this Consent Order. The State reserves, and this Consent Order is without prejudice to, all rights against the Respondents with respect to all such other matters, including, but not limited to, the following:

1.    Conditions unknown to the Department at the time of issuance of a completion certificate pursuant to Section VII.E.6.b of this Consent Order, which are discovered following issuance of the completion certificate, where the previously unknown conditions together with other relevant information indicate that a particular completion certificate is not protective of human health or the environment;

2.    Information unknown to the Department at the time of issuance of a completion certificate pursuant to Section VII.E.6.b of this Consent Order, which is discovered following issuance of the completion certificate, where the new information together with other relevant information indicate that a particular completion certificate is not protective of human health or the environment;

3.    Liability arising from the past, present, or future disposal or release of Contaminants outside the Facility to the extent the State obtains information concerning such disposal or release following termination of this Consent Order and such information was not available to the Department at the time of termination;

4.    Liability arising from the future disposal or release of Contaminants at the Facility to the extent the State obtains information concerning such disposal or release following

termination of this Consent Order and such information was not available to the Department at the time of termination;

5.   Liability for damages for injury to, destruction of, or loss of natural resources and the costs of any natural resource damage assessment or other related costs, and liability for damages under any federal or state statute (except for such liability, if any, under the HWA, SWA or RCRA) or federal or state common law, for past, present or future releases of contaminants to the environment;

6.   Criminal liability; and

7.   Liability for violation of federal or state law, which occurs during or after implementation of the corrective action.

Although this Consent Order does not address radionuclides or radionuclide contamination at the Facility, the State reserves the right to bring any action, including judicial or administrative action, under any appropriate authority, to compel the Respondents to monitor and report radionuclide contamination at or from the Facility, to consider such radionuclide contamination in conducting risk assessment, and to clean up such radionuclide contamination.

Respondents reserve all available defenses to any action reserved by the State under this section (III.T).

## III.U                     ENFORCEMENT

This Consent Order is an enforceable document.  If the Respondents violate any requirements of this Consent Order, the State's sole remedy for such noncompliance shall be to enforce those requirements pursuant to applicable law, subject, however, to the provisions of Section III.G.7, which apply where the State has sought stipulated penalties pursuant to this Consent Order.

The State maintains that it may take the following actions, or some combination of the following actions, to enforce the requirements of this Consent Order:  issue a compliance order under section 74-4-10 of the HWA seeking injunctive relief or civil penalties for Respondents' noncompliance with the requirements of the Consent Order; file a civil action under sections 74-4-10 and 74-4-10.1(E) of the HWA or section 7002(a) of RCRA, 42 U.S.C. § 6972(a), seeking injunctive relief or civil penalties for alleged violations of the Consent Order; and file an action seeking criminal penalties under section 74-4-11 of the HWA.  The State also maintains that each requirement of this Consent Order is an enforceable "requirement" of the HWA within the meaning of section 74-4-10 and an enforceable "requirement" of RCRA within the meaning of section 7002(a)(1)(A), 42 U.S.C. § 6972(a)(1)(A).  The State further maintains that the list of authorities identified in this Paragraph is not exhaustive and reserves all rights to take any action authorized by law to enforce the requirements of this Consent Order.  The State maintains that citizens may sue to enforce the requirements of this Consent Order pursuant to section 7002(a) of RCRA, 42 U.S.C. § 6972(a), if Respondents violate those requirements.

maintenance) are enforceable under the Permit.  The Department's determination that corrective action is complete for a SWMU placed on either the Corrective Action Complete With Controls list or the Corrective Action Complete Without Controls list will be subject to the State's reservation of rights for new information or unknown conditions.  During the pendency of this Consent Order, if the Department seeks to require additional work at any SWMU contained on either of the two lists for Corrective Action Complete, it will initiate a Permit modification to remove the SWMU from such list.

**III.W.4**             **Renewal of Permit**

The requirements of this Consent Order shall not terminate upon renewal of the Permit issued to the Respondents.  The renewed Permit, and any future modifications, renewals, or reissuance of the Permit, will not include any corrective action requirements, nor any other requirement that is duplicative of this Consent Order.  The Permit or any renewed Permit can include the four excepted items and the list of SWMUs requiring corrective action described in Section III.W.1.

**III.W.5**             **Preservation of Procedural Rights**

This Consent Order hereby incorporates all rights, procedures and other protections afforded the Respondents and the public pursuant to the regulations at 20.4.1.900 NMAC (incorporating 40 C.F.R. § 270.42) and 20.4.1.901 NMAC, including, but not limited to, opportunities for public participation, including public notice and comment, administrative hearings, and judicial appeals concerning, for example, remedy selection decisions of the Department.

**III.W.6**             **Contingencies**

The Department hereby commits to process the Permit Modification described in Section III.W.3.a (Class III Permit Modification to Remove Corrective Action Requirements) expeditiously.  In making this commitment, the State recognizes that the Respondents have entered into this Consent Order based on their understanding that there shall be only one enforceable instrument for corrective action and that such instrument is this Consent Order.  (See Section III.W.2 Effect of Consent Order on Permit).  If the Department fails to issue for public comment a draft Permit Modification as described in Section III.W.3.a within 6 months after the date a Permit Modification request is submitted, this Consent Order automatically shall be vacated.  In such circumstance, the Parties agree to meet and confer within one week following the vacating of the Consent Order in an attempt to agree upon the most efficient approach to setting forth the corrective action requirements in an enforceable document.

If the Department denies the Permit Modification request and the basis for the denial can be cured, the Parties will promptly take all appropriate actions to cure the identified deficiency.  This Consent Order automatically shall be vacated 30 days after the Department's denial of the Permit Modification request, unless the basis for the permit modification denial can be cured.

If the Department grants the Permit Modification request, and a court of competent jurisdiction determines that corrective action requirements for releases of hazardous waste or hazardous waste constituents in this Consent Order must be included in the Permit, the Respondents shall submit a Class 3 Permit Modification request that incorporates those terms of the Consent Order

## XII.    COMPLIANCE SCHEDULE TABLES

The Respondents shall follow the specified compliance schedules for all of the SWMUs, AOCs, canyons, and watershed aggregates included in this Order.  Table XII-1 is the closure milestone schedule by watershed.  Tables XII-2 and XII-3 are the compliance schedules of deliverables. Table XII-4 is the compliance schedule for the general requirements included in this Order. Table XII-5 is the sampling and monitoring schedule for alluvial, intermediate, and regional groundwater monitoring wells and springs.   The details of the compliance activities and deliverables can be found in Sections IV, V, and VI of this Consent Order.  Specific remedies for SWMUs, AOCs, canyons, or watershed aggregates are not presumed under this Consent Order.

**Table XII-2**
**Schedule of Deliverables by Watershed**

| DELIVERABLE | DUE DATE | NOTICE DATE[1] | ACTUAL NOTICE DATE |
|---|---|---|---|
| **Los Alamos/Pueblo Watershed** | | | |
| SWMU 21-014 (MDA A) | | | |
| Investigation Work Plan | 31-Jan-05 Submitted | 17-May-05 | 26-Jul-05 |
| Investigation Report | 9-Nov-06 Submitted | 9-Mar-07 | |
| Remedy Completion Report | 11-Mar-11 | 9-Jul-11 | |
| SWMU 21-015 (MDA B) | | | |
| Investigation Work Plan | 30-Jun-04 Submitted | 28-Oct-04 | 21-Dec-04 |
| Investigation/Remediation Work Plan | 26-Mar-06 Submitted | 31-Jan-07 | |
| Remedy Completion Report | 31-Dec-10 | 30-Jun-11 | |
| SWMUs 21-001, 21-010(a-h), 21-011(a, c-j), 21-016(a-c), 21-028(a), C-21-009, C-21-012 (MDA T) | | | |
| Investigation Work Plan | 29-Feb-04 Submitted | 31-May-04 | 19-May-05 |
| Investigation Report | 18-Sep-06 Submitted | 16-Jan-07 | |
| Phase II Investigaton Work Plan | 15-Feb-07 Submitted | 30-Apr-07 | |
| Phase II Investigation Report | 15-Nov-07 | 15-Mar-08 | |
| Remedy Completion Report | 19-Dec-10 | 18-Apr-11 | |
| SWMUs 21-017(a-c), 21-022(f) (MDA U) | | | |
| Investigation Work Plan | 30-Nov-04 Submitted | 15-Mar-05 | 21-Mar-05 |
| Investigation Report | 6-Feb-06 Submitted | 6-Jun-06 | 28-Sep-06 |
| Remedy Completion Report[3] | 6-Nov-11 | 6-Mar-12 | |
| SWMUs 21-013(b, g), 21-018(a, b) (MDA V) | | | |
| Investigation Work Plan | 30-Jun-04 Submitted | 13-Oct-04 | 5-Nov-04 |
| Investigation Report | 31-Oct-06 Submitted | 28-Feb-07 | |

| | | | |
|---|---|---|---|
| Revised Investigation Report | 16-Jul-07 Submitted | 15-Nov-07 | |
| Remedy Completion Report | 2-Jun-11 | 30-Sep-11 | |
| SWMUs 73-001(a-d), 73-004(d) (Airport Landfill) | | | |
| Remedy Design Work Plan | 30-Apr-04 Submitted | 28-Aug-04 | 2-Sep-04 |
| Remedy Completion Report | 15-Apr-07 Submitted | 13-Aug-07 | |
| Los Alamos/Pueblo Canyons | | | |
| Investigation Report | 30-Apr-04 Submitted | 27-Oct-04 | 11-May-05 |
| North Canyons (Guaje/Barrancas/Rendija/Bayo) | | | |
| Investigation Report | 30-Jun-09 | 28-Sep-09 | |
| DP Site Aggregate Area | | | |
| Investigation Work Plan | 31-Aug-04 Submitted | 28-Jan-05 | 13-Apr-05 |
| Investigation Report | 7-Nov-07 | 7-Sep-08 | |
| Pueblo Canyon Aggregate Area | | | |
| Investigation Work Plan | 31-May-05 Submitted | 28-Sep-05 | 23-Sep-05 |
| Investigation Report | 28-Mar-08 | 25-Aug-08 | |
| SWMU 73-002 | | | |
| Investigation Work Plan | 31-May-05 Submitted | 28-Sep-05 | 30-Sep-05 |
| Investigation Report | 12-Sep-06 Not submitted | 11-Dec-06 | |
| Bayo Canyon Aggregate Area (includes SWMUs 10-002(a,b), 10-003(a-o), 10-004(b), and 10-007) | | | |
| Investigation Work Plan | 30-Jul-05 Submitted | 26-Dec-05 | 19-Dec-05 |
| Investigation Report | 1-Mar-08 | 30-May-08 | |
| Upper Los Alamos Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Apr-06 Submitted | 28-Aug-06 | 6-Nov-06 |
| Investigation Report | 31-May-09 | 30-Apr-10 | |
| Lower Los Alamos Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Oct-07 | 29-Jan-08 | |
| Middle Los Alamos Canyon Aggregate Area | | | |

| | | | |
|---|---|---|---|
| Investigation Work Plan[2] | 31-Dec-05 Submitted | 30-May-06 | 30-May-06 |
| Investigation Report | 19-Jan-08 | 19-Jul-08 | |
| Guaje/Barrancas/Rendija Canyons Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Jul-05 Submitted | 29-Oct-05 | 5-Jan-06 |
| Investigation Report | 31-Aug-07 | 29-Dec-07 | |
| Regional Well Rehabilitation and Replacement | | | |
| Work Plan Update | 13-Jun-07 | 28-Aug-07 | |
| **Mortandad Watershed** | | | |
| SWMU 50-009 (MDA C) | | | |
| Investigation Work Plan | 31-Jul-03 Submitted | 1-Jun-04 | 6-Apr-05 |
| Investigation Report | 6-Dec-06 Submitted | 5-Apr-07 | |
| Remedy Completion Report | 5-Sep-10 | 3-Jan-11 | |
| Mortandad Canyon | | | |
| Investigation Report | 28-Oct-06 Submitted | 25-Feb-07 | |
| Cañada del Buey | | | |
| Investigation Report | 31-Aug-09 | 29-Nov-09 | |
| Upper Mortandad Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Nov-07 | 29-Mar-08 | |
| Upper Cañada del Buey Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Jun-08 | 28-Oct-08 | |
| Middle Cañada del Buey Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Oct-07 | 29-Jan-08 | |
| Lower Mortandad/Cedro Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Oct-09 | 29-Jan-10 | |
| Lower Mortandad/Cañada del Buey Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Apr-09 | 29-Jul-09 | |
| Middle Mortandad/Ten Site Canyon Aggregate Area | | | |
| Supplemental SAP | 31-May-04 Submitted | 29-Jun-04 | 25-Jun-04 |

| Investigation Report | 30-Sep-05 Submitted | 27-Feb-06 | 14-Aug-06 |
|---|---|---|---|
| Revised Investigation Report | 20-Jul-07 Submitted | 30-Apr-08 | |
| **Chromium Contamination in Regional Well R-28 Groundwater** | | | |
| Interim Measures Report | 30-Nov-06 Submitted | 30-Dec-06 | 27-Dec-06 |
| Phase II Work Plan | 30-Jan-07 | 1-Mar-07 | |
| **Water Canyon/Cañon de Valle Watershed** | | | |
| **SWMU 16-003(o)** | | | |
| Investigation Work Plan | 31-Mar-04 Submitted | 29-Jun-04 | 28-Jun-04 |
| Investigation Report | 31-Jan-06 Submitted | 1-May-06 | 25-Oct-06 |
| **SWMU 16-008(a)** | | | |
| Investigation Work Plan | 31-Mar-05 Submitted | 29-Jul-05 | 19-Aug-05 |
| Investigation Report | 21-Jun-07 | 19-Sep-07 | |
| **SWMUs 16-021(c), 16-003(k)** | | | |
| Phase III RFI Report | 30-Sep-03 Submitted | 1-Mar-05 | 21-Jun-04 |
| CMS Report for Surface System/Alluvial Groundwater | Submitted | 1-Mar-05 | 13-Oct-06 |
| CMI Plan for Surface System/Alluvial Groundwater | 13-May-07 Submitted | 30-Sep-07 | |
| Investigation Report for Intermediate and Regional Groundwater | 31-Aug-06 Submitted | 29-Nov-06 | |
| CME Report for Intermediate and Regional Groundwater | 31-May-07 | 28-Sep-07 | |
| CMI Plan for Intermediate and Regional Groundwater | 30-Nov-07 | 28-Feb-08 | |
| **Water Canyon/Cañon de Valle** | | | |
| Investigation Work Plan (includes Ancho/Chaquehui/Indio/Fence/Potrillo Canyons) | 30-Sep-06 Submitted | 29-Mar-07 | |
| Investigation Report (Water Canyon/Cañon de Valle) | 31-Dec-10 | 30-Apr-11 | |
| **Potrillo/Fence Canyons** | | | |
| Investigation Report | 31-Aug-11 | 29-Nov-11 | |
| **Cañon de Valle Aggregate Area** | | | |

| | | | |
|---|---|---|---|
| Investigation Work Plan[2] | 30-Sep-06 Submitted | 12-Feb-07 | |
| **S-Site Aggregate Area** | | | |
| Investigation Work Plan[2] | 30-Sep-07 | 28-Jan-08 | |
| **Upper Water Canyon Aggregate Area** | | | |
| Investigation Work Plan[2] | 31-Aug-10 | 29-Dec-10 | |
| **Lower Water/Indio Canyon Aggregate Area** | | | |
| Investigation Work Plan[2] | 30-Sep-12 | 29-Dec-12 | |
| **Potrillo/Fence Canyon Aggregate Area** | | | |
| Investigation Work Plan[2] | 30-Apr-09 | 13-Aug-09 | |
| **Sandia Watershed** | | | |
| SWMU 53-002 (a,b) | | | |
| Investigation Report | 30-Jan-04 Submitted | 30-May-04 | 25-Jul-06 |
| Sandia Canyon | | | |
| Investigation Report | 31-Aug-09 | 29-Dec-09 | |
| Upper Sandia Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Mar-08 | 13-Aug-08 | |
| Lower Sandia Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Apr-09 | 13-Aug-09 | |
| **Pajarito Watershed** | | | |
| SWMU 54-004 (MDA H) | | | |
| CMS Report | 31-May-03 Submitted | 31-Dec-04 | Pending |
| CMI Plan | Pending | Pending | |
| Remedy Completion Report | Pending | Pending | |
| SWMU 54-006 (MDA L) | | | |
| Investigation Work Plan | 31-Aug-03 Submitted | 31-Mar-04 | 28-Sep-04 |
| Investigation Report | 13-Sep-05 Submitted | ~~27-Dec-05~~ 31-Jul-07 | |
| CME Report | 9-Aug-07 | 7-Dec-07 | |
| Remedy Completion Report | 9-Jul-11 | 6-Nov-11 | |
| SWMU 3-010(a) | | | |
| Investigation Report | 31-Aug-05 Submitted | 29-Nov-05 | |
| MDA G | | | |

| | | | |
|---|---|---|---|
| Investigation Work Plan | 30-Sep-03 Submitted | 31-Jul-04 | 5-Nov-04 |
| Investigation Report | 8-Sep-05 Submitted | 21-Jan-06 | Pending |
| CME Work Plan | 5-Jun-06 | ~~31-Oct-06~~ 31-Dec-07 | |
| CME Report[3] | 12-Sep-08 | 31-Jan-09 | |
| Remedy Completion Report | 6-Dec-15 | 4-Apr-16 | |
| Pajarito Canyon | | | |
| Investigation Report | 29-Feb-08 | 28-Jun-08 | |
| Threemile Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Jul-08 | 28-Nov-08 | |
| Lower Pajarito Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Jul-10 | 13-Dec-10 | |
| Starmer/Upper Pajarito Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Sep-10 | 12-Feb-11 | |
| Twomile Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Jan-10 | 15-Jun-10 | |
| **Ancho Watershed** | | | |
| SWMUs 49-005(a), 49-006, AOCs C-49-002, C-49-005(b), C-49-008(a, b) (Areas 5, 6, and 10) | | | |
| Investigation Work Plan | 31-Oct-07 | 28-Feb-08 | |
| Investigation Report | 31-May-10 | 28-Sep-10 | |
| SWMUs 49-001(a-g), 49-003, AOC C-49-008(d) (MDA AB, Areas 1, 3, 4, 11, and 12) | | | |
| Investigation Work Plan | 31-Oct-07 | 28-Feb-08 | |
| Investigation Report | 31-May-10 | 28-Sep-10 | |
| Remedy Completion Report | 31-Jan-15 | 31-May-15 | |
| Ancho/Chaquehui/Indio Canyons | | | |
| Investigation Report | 28-Feb-11 | 29-May-11 | |
| North Ancho Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Sep-07 | 13-Jan-08 | |
| South Ancho Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Mar-13 | 29-Jun-13 | |
| **Chaquehui Watershed** | | | |
| Chaquehui Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 30-Nov-09 | 28-Feb-10 | |
| SWMU 33-013 | | | |

| | | | |
|---|---|---|---|
| Remedy Completion Report | 3-Mar-06 Submitted | 1-Jun-06 | 30-Aug-06 |
| **Frijoles Watershed** | | | |
| Frijoles Canyon Aggregate Area | | | |
| Investigation Work Plan[2] | 31-Oct-10 | 29-Jan-11 | |
| **Technical Area 57** | | | |
| TA-57 Aggregate Area (Fenton Hill) | | | |
| Investigation Work Plan[2] | 31-Oct-11 | 29-Jan-12 | |

Note:  All deliverables marked as "Submitted" were submitted to the Department on or before the due date.

1.  "Notice Date" is described in Section III.M.2 of the Order on Consent.

2.  Investigation Work Plans for the Aggregate Areas shall include a schedule for submitting the Investigation Reports.

3. NMED has issued a Certificate of Completion for the SWMU(s) and AOC(s) covered by this document.  Pending a Class 3 permit modification to remove the SWMU(s) from the list of SWMUs requiring corrective action, NMED will no longer require submittal of this document.

*NMED/LANL Order on Consent*

**Table XII-3**
Schedule of Deliverables by Calendar Year

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|------|-------------|----------|-----------------|--------------------|
| | | CY03 | | |
| SWMU 54-004 (MDA H) | CMS Report | 5/31/03 Submitted | 12/31/04 | Pending |
| SWMU 50-009 (MDA C) | Investigation Work Plan | 7/31/03 Submitted | 6/1/04 | 4/6/05 309 days past due |
| MDA G | Investigation Work Plan | 9/30/03 Submitted | 7/31/04 | 11/5/04 97 days past due |
| SWMU 54-006 (MDA L) | Investigation Work Plan | 8/31/03 Submitted | 3/31/04 | 9/28/04 181 days past due |
| SWMUs 16-021(c), 16-003(k) | Phase III RFI Report | 9/30/03 Submitted | 3/1/05 | 6/21/04 |
| | | CY04 | | |
| SWMUs 53-002 (a,b) | Investigation Report | 1/31/04 Submitted | 5/30/04 | 7/25/06 785 days past due |
| SWMUs 21-001, 21-010(a-h), 21-011(a,c-j), 21-016(a-c), 21-028(a), C-21-009, C-21-012 (MDA T) | Investigation Work Plan | 2/29/04 Submitted | 5/31/04 | 5/19/05 353 days past due |
| Middle Mortandad/Ten Site Canyon Aggregate Area | Supplemental SAP | 3/31/04 Submitted | 6/29/04 | 6/25/04 |
| SWMU 16-003(o) | Investigation Work Plan | 3/31/04 Submitted | 6/29/04 | 6/28/04 |
| Los Alamos/Pueblo Canyon | Investigation Report | 4/30/04 Submitted | 10/27/04 | 5/11/05 196 days past due |
| SWMUs 73-001(a-d), 73-004(d) (Airport Landfill – Mesa Top) | Remedy Design Work Plan | 4/30/04 Submitted | 8/28/04 | 9/2/04 5 days past due |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|---|---|---|---|---|
| SWMUs 21-013(b, g), 21-018(a, b) (MDA V) | Investigation Work Plan | 6/30/04 Submitted | 10/13/04 | 11/5/04 23 days past due |
| SWMU 21-015(MDA B) | Investigation Work Plan | 6/30/04 Submitted | 10/28/04 | 12/21/04 54 days past due |
| DP Site Aggregate Area | Investigation Work Plan[2] | 8/31/04 Submitted | 1/28/05 | 4/13/05 75 days past due |
| SWMUs 21-017(a-c), 21-022(f) (MDA U) | Investigation Work Plan | 11/30/04 Submitted | 3/15/05 | 3/21/05 6 days past due |
| | | CY05 | | |
| SWMUs 16-021(c), 16-003(k) | CMS Report for Surface System/Alluvial Groundwater | Submitted | 3/1/05 | 10/13/06 591 days past due |
| SWMU 21-014 (MDA A) | Investigation Work Plan | 1/31/05 Submitted | 5/17/05 | 7/26/05 70 days past due |
| SWMU 16-008(a) | Investigation Work Plan | 3/31/05 Submitted | 7/29/05 | 8/19/05 21 days past due |
| Pueblo Canyon Aggregate Area | Investigation Work Plan | 5/31/05 Submitted | 9/28/05 | 9/23/05 |
| SWMU 73-002 | Investigation Work Plan | 5/31/05 Submitted | 9/28/05 | 9/30/05 2 days past due |
| SWMU 54-004 (MDA H) | CMI Plan | Pending | Pending | |
| Bayo Canyon Aggregate Area (including SWMUs 10-002(a,b), 10-003(a-o), 10-004(b), and 10-007) | Investigation Work Plan | 7/30/05 Submitted | 12/26/05 | 12/19/05 |
| Guaje/Barrancas/ Rendija Canyons Aggregate Area | Investigation Work Plan[2] | 7/31/05 Submitted | 10/29/05 | 1/5/06 68 days past due |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|------|-------------|----------|-----------|-----------|
| SWMU 3-010(a) | Investigation Report | 8/31/05 Submitted | 11/29/05 | 5/14/07 531 days past due |
| MDA G | Investigation Report | 9/8/05 Submitted | 1/21/06 | |
| SWMU 54-006 (MDA L) | Investigation Report | 9/13/05 Submitted | 12/27/05 7/31/07 | |
| Middle Mortandad/Ten Site Canyon Aggregate Area | Investigation Report | 9/30/05 Submitted | 2/27/06 | 8/14/06 168 days past due |
| Middle Los Alamos Canyon Aggregate Area[2] | Investigation Work Plan | 12/31/05 Submitted | 5/30/06 | 5/30/06 |
| | | CY06 | | |
| SWMU 16-003(o) | Investigation Report | 1/31/06 Submitted | 5/1/06 | 10/25/06 177 days past due |
| SWMUs 21-017(a-c), 21-022(f) (MDA U) | Investigation Report | 2/6/06 Submitted | 6/6/06 | 9/28/06 114 days past due |
| SWMU 33-013 | Remedy Completion Report | 3/3/06 Submitted | 6/1/06 | 8/30/06 90 days past due |
| SWMU 21-015 (MDA B) | Investigation/Remediation Work Plan | 3/26/06 Submitted | 7/23/06 1/31/07[4] | 1/31/07 |
| Upper Los Alamos Canyon Aggregate Area | Investigation Work Plan[2] | 4/30/06 Submitted | 8/28/06 | 11/6/06 70 days past due |
| MDA G | CME Work Plan | 6/5/06 Submitted | ~~10/31/06~~ 12/31/07 | |
| SWMUs 16-021(c), 16-003(k) | Investigation Report for Intermediate and Regional Groundwater | 8/31/06 Submitted | 11/29/06 | |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|------|-------------|----------|-----------------|--------------------|
| SWMU 73-002 | Investigation Report | 9/12/06 Not submitted | 12/11/06 | |
| SWMU 54-004 (MDA H) | Remedy Completion Report | Pending | Pending | |
| SWMUs 21-001, 21-010(a-h), 21-011(a, c-j), 21-016(a-c), 21-028(a); AOCs C-21-009, C-21-012 (MDA T) | Investigation Report | 9/18/06 Submitted | 1/16/07 | |
| Cañon de Valle Aggregate Area | Investigation Work Plan[2] | 9/30/06 Submitted | 2/12/07 | |
| Water Canyon/Cañon de Valle | Investigation Work Plan (includes Ancho/Chaquehui/Indio/Fence/ Potrillo Canyons) | 9/30/06 Submitted | 3/29/07 | |
| Mortandad Canyon | Investigation Report | 10/28/06 Submitted | 2/25/07 | |
| SWMUs 21-013(b, g), 21-018(a, b) (MDA V) | Investigation Report | ~~7/21/06~~ 10/31/06 Submitted | ~~11/18/06~~ 2/28/07 | |
| SWMU 21-014 (MDA A) | Investigation Report | 11/9/06 Submitted | 3/9/07 | |
| Chromium Contamination in Regional Well R-28 Groundwater | Interim Measures Report | 11/30/06 | 12/30/06 | |
| SWMU 50-009 (MDA C) | Investigation Report | 12/6/06 | 4/5/07 | |
| | | CY07 | | |
| Chromium Contamination in Regional Well R-28 Groundwater | Phase II Work Plan | 1/30/07 | 3/1/07 | |
| SWMUs 73-001(a-d), 73-004(d) (Airport Landfill – Mesa Top) | Remedy Completion Report | 4/5/07 | 8/3/07 | |
| SWMUs 16-021(c), 16-003(k) | CMI Plan for Surface System/Alluvial Groundwater | 5/13/07 | 9/30/07 | |
| Middle Mortandad/Ten Site Canyon Aggregate Area | Revised Investigation Report | 5/18/07 | 1/31/08 | |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|---|---|---|---|---|
| SWMUs 16-021(c), 16-003(k) | CME Report for Intermediate and Regional Groundwater | 5/31/07 | 9/28/07 | |
| SWMU 16-008(a) | Investigation Report | 6/21/07 | 9/19/07 | |
| SWMU 54-006 (MDA L) | CME Report | ~~8/9/07~~ Pending | ~~12/7/07~~ Pending | |
| MDA G | CME Report | ~~8/5/07~~ Pending | ~~12/18/07~~ Pending | |
| Guaje/Barrancas/Rendija Canyons Aggregate Area | Investigation Report | 8/31/07 | 12/29/07 | |
| S-Site Aggregate Area | Investigation Work Plan[2] | 9/30/07 | 1/28/08 | |
| North Ancho Canyon Aggregate Area | Investigation Work Plan[2] | 9/30/07 | 1/13/08 | |
| SWMUs 49-001(a-g), 49-003, AOC C-49-008(d) (MDA AB, Areas 1, 3, 4 ,11, and 12) | Investigation Work Plan | 10/31/07 | 2/28/08 | |
| SWMUs 49-005(a), 49-006, AOCs C-49-002, C-49-005(b), C-49-008(a, b) (Areas 5, 6, and 10) | Investigation Work Plan | 10/31/07 | 2/28/08 | |
| Middle Cañada del Buey Aggregate Area | Investigation Work Plan[2] | 10/31/07 | 1/29/08 | |
| Lower Los Alamos Canyon Aggregate Area | Investigation Work Plan[2] | 10/31/07 | 1/29/08 | |
| DP Site Aggregate Area | Investigation Report | 11/7/07 | 9/7/08 | |
| Upper Mortandad Canyon Aggregate Area | Investigation Work Plan[2] | 11/30/07 | 3/29/08 | |
| SWMUs 16-021(c), 16-003(k) | CMI Plan for Intermediate and Regional Groundwater | 11/30/07 | 2/28/08 | |
| | | CY08 | | |
| Middle Los Alamos Canyon Aggregate Area | Investigation Report | 1/19/08 | 7/19/08 | |
| Pajarito Canyon | Investigation Report | 2/29/08 | 6/28/08 | |
| Bayo Canyon Aggregate Area (including SWMUs 10-002(a,b), 10-003(a-o), 10-004(b), and 10-007) | Investigation Report | 3/1/08 | 5/30/08 | |
| Pueblo Canyon Aggregate Area | Investigation Report | 3/28/08 | 8/25/08 | |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|------|-------------|----------|-----------------|---------------------|
| Upper Sandia Canyon Aggregate Area | Investigation Work Plan[2] | 3/31/08 | 8/13/08 | |
| Upper Cañada del Buey Aggregate Area | Investigation Work Plan[2] | 6/30/08 | 10/28/08 | |
| Threemile Canyon Aggregate Area | Investigation Work Plan[2] | 7/31/08 | 11/28/08 | |
| | | CY09 | | |
| Lower Sandia Canyon Aggregate Area | Investigation Work Plan[2] | 4/30/09 | 8/13/09 | |
| Lower Mortandad/Cañada del Buey Aggregate Area | Investigation Work Plan[2] | 4/30/09 | 7/29/09 | |
| Potrillo/Fence Canyon Aggregate Area | Investigation Work Plan[2] | 4/30/09 | 8/13/09 | |
| Upper Los Alamos Canyon Aggregate Area | Investigation Report | 5/31/09 | 4/30/10 | |
| North Canyons (Guaje/Barrancas/Rendija/Bayo) | Investigation Report | 6/30/09 | 9/28/09 | |
| Sandia Canyon | Investigation Report | 8/31/09 | 12/29/09 | |
| Cañada del Buey | Investigation Report | 8/31/09 | 11/29/09 | |
| Lower Mortandad/Cedro Canyon Aggregate Area | Investigation Work Plan[2] | 10/31/09 | 1/29/10 | |
| Chaquehui Canyon Aggregate Area | Investigation Work Plan[2] | 11/30/09 | 2/28/10 | |
| | | CY10 | | |
| Twomile Canyon Aggregate Area | Investigation Work Plan[2] | 1/31/10 | 6/15/10 | |
| SWMUs 49-001(a-g), 49-003, AOC C-49-008(d) (MDA AB, Areas 1, 3, 4, 11, and 12) | Investigation Report | 5/31/10 | 9/28/10 | |
| SWMUs 49-005(a), 49-006, AOCs C-49-002, C-49-005(b), C-49-008(a, b) (Areas 5, 6, and 10) | Investigation Report | 5/31/10 | 9/28/10 | |
| Lower Pajarito Canyon Aggregate Area | Investigation Work Plan[2] | 7/31/10 | 12/13/10 | |
| Upper Water Canyon Aggregate Area | Investigation Work Plan[2] | 8/31/10 | 12/29/10 | |
| SWMU 50-009 (MDA C) | Remedy Completion Report | 9/5/10 | 1/3/11 | |
| Starmer/Upper Pajarito Canyon Aggregate Area | Investigation Work Plan[2] | 9/30/10 | 2/12/11 | |

| SITE | DELIVERABLE | DUE DATE | NOTICE DATE [1] | ACTUAL NOTICE DATE |
|------|-------------|----------|-----------------|--------------------|
| Frijoles Canyon Aggregate Area | Investigation Work Plan[2] | 10/31/10 | 1/29/11 | |
| SWMUs 21-001, 21-010(a-h), 21-011(a, c-j), 21-016(a-c), and 21-028(a), and AOCs C-21-009 and C-21-012 (MDA T) | Remedy Completion Report | 12/19/10 | 4/18/11 | |
| Water Canyon/Cañon de Valle | Investigation Report | 12/31/10 | 4/30/11 | |
| SWMU 21-015 (MDA B) | Remedy Completion Report | 12/31/10 | 6/30/11 | |
| | | CY11 | | |
| Ancho/Chaquehui/Indio Canyons | Investigation Report | 2/28/11 | 5/29/11 | |
| SWMU 21-014 (MDA A) | Remedy Completion Report | 3/11/11 | 7/9/11 | |
| SWMUs 21-013(b, g), 21-018(a, b) (MDA V) | Remedy Completion Report | 6/2/11 | 9/30/11 | |
| SWMU 54-006 (MDA L) | Remedy Completion Report | 7/9/11 | 11/6/11 | |
| Potrillo/Fence Canyons | Investigation Report | 8/31/11 | 11/29/11 | |
| TA-57 Aggregate Area (Fenton Hill) | Investigation Work Plan[2] | 10/31/11 | 1/29/12 | |
| SWMUs 21-017(a-c), 21-022(f) (MDA U) | Remedy Completion Report[3] | 11/6/11 | 3/6/12 | |
| | | CY12 | | |
| Lower Water/Indio Canyon Aggregate Area | Investigation Work Plan[2] | 9/30/12 | 12/29/12 | |
| | | CY13 | | |
| South Ancho Canyon Aggregate Area | Investigation Work Plan[2] | 3/31/13 | 6/29/13 | |
| | | CY15 | | |
| SWMUs 49-001(a-g), 49-003, AOC C-49-008(d) (MDA AB, Areas 1, 3, 4, 11, and 12) | Remedy Completion Report | 1/31/15 | 5/31/15 | |
| MDA G | Remedy Completion Report | 12/6/15 | 4/4/16 | |

Note: All deliverables marked as "Submitted" were submitted to the Department on or before the due date.

1. "Notice Date" is described in Section III.M.2 of the Order on Consent.

2. Investigation Work Plans for the Aggregate Areas shall include a schedule for submitting the Investigation Reports.

3. NMED has issued a Certificate of Completion for the SWMU(s) and AOC(s) covered by this document.  Pending a Class 3 permit modification to remove the SWMU(s) from the list of SWMUs requiring corrective action, NMED will no longer require submittal of this document.